(114 App. Div. 583)

## PEOPLE ex rel. CITY OF NEW YORK v. MUH et al.

(Supreme Court, Appellate Division, First Department. July 12, 1906.)

1. EMINENT DOMAIN—ASSESSMENT OF DAMAGES—PROCEDURE.

Under Laws 1892, p. 861, c. 413, as amended by Laws 1896, p. 865, c. 716, authorizing the commissioner of public works of the city of New York to construct a bridge and approaches thereto, and to make necessary changes in the grade of streets approaching the bridge, and to that end giving power to condemn any lands deemed necessary for construction of the bridge and approaches, and making applicable so far as necessary the provisions of law relating to the taking of private property for public streets or places, and providing that the expenses of constructing the bridge and approaches shall not exceed a certain amount, and such further sum for paying awards and compensation for land taken for the purpose of said bridge and awards for damages caused by reason of the change of grade of streets approaching the same as may be awarded by the board of assessors of the city, or proper authority, whose duty it shall be to estimate the damages which each owner of land fronting on such street will sustain by reason of such change to such land, or the value of land taken, and make an award of the amount of such damage or value to the owners of such lands fronting on such street and opposite thereto, and affected by such change of grade, and the value of land taken for such purpose—it is only in case an approach is constructed in an existing street, making necessary the change of grade of such street for such purpose, that the board of assessors are to assess the damages occasioned thereby to abutting property owners; and where, instead of this, land is condemned outside the street for an approach, and the grade of the street is not changed, all the damages to the owner of the land condemned, including that to the residue of his land by reason of access therefrom to the street being prevented by the approach built on the land condemned, is to be assessed and awarded by the commissioners in the condemnation proceedings.

2. SAME.

Where, in condemnation proceedings authorized by Laws 1892, p. 861, c. 413, as amended by Laws 1896, p. 865, c. 716, for an approach for a bridge to be constructed by the city of New York, land is taken therefor outside a street, and on proceedings before condemnation commissioners to assess the damages witnesses for both parties testified, not only to the value of the land taken, but to the value of the residue of the tract of the landowner after the approach was constructed, it will be held, on certiorari to review the award of the board of assessors of the city in subsequent proceedings for damages to the residue of the tract of the landowner by reason of access therefrom to the street being prevented by the approach constructed on the land condemned, that such damages were embraced, as under the statute they should have been, in the award in the condemnation proceedings.

Certiorari on the relation of the city of New York to review the determination of Robert Muh and others, composing the board of assessors of the city of New York, in favor of Elizabeth Lyon and others. Determination reversed.

Certiorari issued out of the Supreme Court, and attested on the 4th day of August, 1905, directed to the board of assessors of the city of New York and others, commanding them to certify and return to the office of the clerk of the county of New York all and singular the proceedings had concerning an award to Elizabeth Lyon, individually and as executor of the last will and testament of Henry Hart, deceased, and Charles Remsen and William Manice, as executors of the last will and testament of William Remsen, deceased, for damages alleged to have arisen because of the change of grade occasioned by the construction of the Third Avenue Bridge across the Harlem river.

Argued before O'BRIEN, P. J., and McLAUGHLIN, LAUGH-
LIN, CLARKE, and HOUGHTON, JJ.

Theodore Connoly, for relator.
Ernest Hall, for respondents.

HOUGHTON, J.   The board of assessors of the the city of New
York awarded to the respondents $80,000 as damages to property own-
ed by them abutting on the approach along 130th street to the Third
Avenue Bridge across the Harlem river, because of changes of grade
caused by the construction of such approach.   The approach begins
at Lexington avenue at grade, and gradually rises, supported by a solid
wall of masonry, along the front of respondents' property, and along
the northerly side of 130th street, to an extreme height at the bridge
of 24 feet.   The grade of 130th street proper remains as it was prior
to the erection of the bridge.   The respondents owned the land upon
which the approach is built.   Proceedings were instituted in August,
1893, to condemn these lands for the purpose of building this bridge
and approaches, which resulted, in 1897, in an award to respondents
or their testators of $146,850.   It is that part of the land not taken for
which they now claim damage.   The Third Avenue Bridge was con-
structed under the authority given by chapter 413, p. 861, of the Laws
of 1892, as amended by chapter 716, p. 865, of the Laws of 1896.   By
that act the commissioners. of public works of the city of New York
were authorized to construct such bridge and suitable approaches there-
to, and to make such changes in the grade lines of streets or avenues
approaching the bridge as might be necessary.   To that end power was
given to condemn any lands which might be deemed necessary for the
purposes of constructing such bridge and approaches, and the provi-
sions of the law relating to the taking of private property for public
streets or places was made applicable so far as necessary.   Under this
power commissioners were appointed, and a strip of land 44 feet wide
along the northerly side of 130th street was taken from the front of the
lots owned by respondents, abutting on such street, for the purpose of
constructing thereon the westerly approach to the bridge, starting at
Lexington avenue, and the proceeding resulted in the award last re-
ferred to.

The city claims that this award should and did embrace all the dam-
ages to which respondents were entitled, not only for the taking of
their land, but for all consequential damages sustained by the height
and grade of the approach, and the resulting shutting off of access to
130th street.

The theory of the respondents is that their entire damages were not
embraced in the condemnation proceedings, and that, although the ap-
proach to the bridge is wholly upon lands outside the line of 130th
street, yet the effect of constructing the approach in this manner was
to widen 130th street and change its grade, and that, therefore, as
widened, the grade of the street in front of their property has been
changed; or, if this be not literally the fact, that the building of the
approach in the manner in which it was constructed, shutting their
property off from access to the street, was "a chaige of grade of streets

or avenues approaching" the bridge within the contemplation of the act for which recovery of damages was provided. The authority for this contention is claimed to be found in that part of the act which reads as follows:

"Sec. 4. The expenses of constructing the said bridge and approaches thereto, with the necessary abutments and arches as aforesaid, shall not exceed one million five hundred thousand dollars, and such further sum which may be paid for the leased land as mentioned in section six thereof, and also such further sum for paying awards and compensation for land taken for the purpose of said bridge and awards for damages caused by reason of the change of grade of streets or avenues approaching the same, authorized by this act as may be awarded by the board of assessors of said city, or proper authority, whose duty it shall be to estimate the damage which each owner of land fronting on such street or avenue will sustain by reason of such change to such land or to any improvements thereon, or the value of land taken, and make a just and equitable award of the amount of such damage or value to the owner or owners of such lands or tenements fronting on such street or avenue and opposite thereto, and affected by such change of grade, and the value of any and all land taken for the purpose aforesaid." Laws 1896, p. 867, c. 716.

The language of this statute is not as clear as it might be. From the whole act it is plain, however, that the city proposed to erect a bridge which it should own, and that its piers and abutments should be upon land to which it had acquired title, and that, if there was any occasion for the building of approaches outside any street, it should also acquire title to lands upon which they were to be built. If, however, any approach was to be constructed in an existing street, making necessary the change of grade of such street for that purpose, the board of assessors, and not the condemnation commissioners, should assess the damages occasioned thereby to abutting property owners. On the other hand, if it becomes necessary to acquire any lands by condemnation outside a street upon which to build any part of the bridge, including the approaches, which under the circumstances would be a part of the bridge itself (Matter of City of New York, 174 N. Y. 26, 66 N. E. 584), the damages were then to be adjusted according to the rules applicable to ordinary condemnation proceedings. This interpretation gives effect to all the language of the act, and it would seem to be what the Legislature had in mind.

The city desired to and did condemn a part of respondents' land, being a strip lying along 130th street. The plan of the bridge was before the commissioners in the condemnation proceeding. It was known to all parties to that proceeding where and what manner the bridge and its approaches were to be constructed, and that a solid masonry wall along 130th street was a necessity to support the roadway of the approach. The statute contemplated that just compensation should be given to persons whose lands were actually taken. When a part of a tract of land is taken, just compensation includes damages to the remainder. 2 Lewis, Em. Dom. § 464. Where the proposed use of the property taken would depreciate the value of that which is not taken, such proposed use can be regarded, and the depreciation arising therefrom be awarded as part of the consequential damages suffered from the taking. Bohm v. M. E. R. Co., 129 N. Y. 576, 585, 29 N. E. 802, 14 L. R. A. 344; Henderson v. C. R. R. Co., 78 N. Y. 423. In the latter case

in the course of the opinion the court quotes with approval from Alb. N. R. Co. v. Lansing, 16 Barb. 71, the following:

"They [the commissioners] were to consider how the taking of the land would affect the residue of the owner's land. Would it leave that residue in an inconvenient unmarketable shape? If so, this fact might properly be taken into the account in determining the amount of compensation. Thus, if the land to be taken should lie between the owner's house and the highway, the amount of compensation would be vastly more than for the same quantity of land, equally valuable in itself, but situated in some remote part of the owner's premises."

The proper rule with respect to damages in the condemnation proceeding was therefore to award to the owners not only the value of the land actually taken, but the consequential damage to the balance arising from the use to which the land taken was to be put. Presumptively that rule was followed. The testimony of some of the experts as to value who were sworn in the condemnation proceeding was put in evidence in this proceeding, and from such testimony we think it appears in fact to have been followed. The claimants in that proceeding and the respondents in this called as an expert William E. Hawes, and, after asking him his opinion of the value of the land actually taken, he was asked to state what in his opinion was the value of the remainder of the parcel of land, after taking from it the land for approaches to the bridge, and after the approaches to the bridge had been constructed, and gave his opinion thereon. Being further interrogated, he was asked what he assumed in his estimate to exist with reference to the approach, and he answered that he assumed that the structure was a solid one, commencing at Lexington avenue, and running to Third avenue, commencing at grade and reaching an elevation of 17 to 18 feet at Third avenue; and that he assumed that such structure would be a physical obstruction to access to any part of the remaining property either from 130th street or from Third avenue. The actual extreme height was 24 feet, but the plan was before him, and he should have known that fact. The claimants in that proceeding also called Frank C. Swartout. He testified to the value of the entire parcel as it was, the value of that remaining, and he was permitted to answer that in his opinion there were consequential damages to the remainder of the property by reason of the shutting off of the frontage of 130th street, and gave his estimate as to that. Being interrogated as to the value of the separate lots, he gave his various estimates of their value after the erection of the approach. The witnesses Fogg and Plass, called by the city in that proceeding, gave their testimony of the value of the remaining part after the approach had been constructed. The only circumstance that appears to have occurred upon the condemnation proceeding which militates against this conclusion is the attitude of the attorney representing the property owners, who at one stage of the proceeding objected to an expert witness considering the construction of the approach in connection with his estimate of the depreciation of the remaining lands, upon the ground that the construction of the approach was not the subject of compensation before the commissioners, because the act provided that any damage for change of grade should be pre-

sented to the board of assessors, to which objection the chairman of the commission responded that such testimony would not be received for the purpose of determining that character of damage; that the witness had already stated that in estimating the values he had taken into consideration the fact that access to the lots could not be had except through tunnels under the approach, and that in giving his estimates the witness had evidently taken into consideration the relation of the bridge approach as it will be constructed, and that therefore the inquiry was proper matter for cross-examination. This ruling of the commissioners indicates that it was understood by them that the consequential damages resulting from the erection of the approach and the cutting off of access to the street of the remaining lands were to be determined by them, and that they were not to award simply the value of the land actually taken, irrespective of the use to which it was to be put.

Manifestly, the consequential damages to respondents' remaining property was very great by reason of the character of the structure which was to be put upon that part which was taken. The rule that such damages could be recovered had been long established, and presumably was well known. Taking this into consideration, as well as the character of the questions put to the witnesses called upon the question of value, we think it must be assumed that all damages, actual as well as consequential, were awarded in that proceeding to these respondents, and that the present award was improperly made.

There is very grave doubt whether the respondents could ever recover damages in this proceeding, even though consequential damages had not then been allowed. The city has built upon its own land a structure designed for travel, in the same manner as a street would be traveled, it is true, but it has not in any legal sense changed the grade of 130th street. That street remains at its original grade. If the approach be deemed a street, its construction was the laying out of a new one, and no change of grade from that originally established has ever been made; for can the building of the approach be deemed a widening of 130th street at a different grade. It is a separate and distinct structure from the street itself. If the respondents have not received compensation for the erection of the approach and the destroying of access to their lands, it is unfortunate, but we see no ground upon which the present award can be justified.

The determination of the board of assessors should be reversed, with $50 costs and disbursements to the relator.

O'BRIEN, P. J., and McLAUGHLIN and CLARKE, JJ., concur.

LAUGHLIN, J. (concurring). I agree with Mr. Justice HOUGHTON that the writ should be sustained and the proceedings of the assessors annulled, but I reach that conclusion on grounds somewhat different from the views expressed by him. I do not agree that the commissioners in the eminent domain proceedings to acquire lands for the approaches to the bridge made an award for the damages for which the assessors have made the award now under review. The fair in-

ference from the record is that, in the estimate of damages by the experts for the landowners, those damages were not included; for it appears that their attorney insisted that those damages were not recoverable in that proceeding, but were assessable by the board of assessors under the provisions of the statute under which the proceedings were had relating to damages for change of grade of streets connecting with the bridge and its approaches; and the chairman of the commission so ruled. That, however, does not avail the claimant now. When the authority of the board of assessors, who award damages, is questioned, clear warrant for their action must be found in the statute. Considering all of the provisions of chapter 413, p. 861, of the Laws of 1892, as amended by chapter 716, p. 865, of the Laws of 1896, under which this bridge was constructed, the land for these approaches was acquired, and the assessment now under review is sought to be sustained, it appears clear to me that the Legislature only intended to authorize the board of assessors to ascertain and award damages to the owners of land fronting upon a then existing street, the grade of which was thereafter changed to meet the grade of the bridge or of the approaches thereto, constructed upon the land acquired for such purpose. It would be unreasonable to impute to the Legislature an intent to relegate parties before the court in eminent domain proceedings to the board of assessors for part of their damages, unless such intent is found clearly expressed in the act. The damages, whether for land acquired or for a change of grade of a street, were required to be borne by the general fund, pursuant to section 4 of the act as amended, and an issue of bonds was authorized to raise moneys to pay the same.

There would be force in the construction for which the city contended before the commission, but which it now repudiates, that the consequential damages caused by the structure to be erected upon the land acquired for the approach were to be subsequently appraised by the board of assessors, if the statute did not require or contemplate that the plans and specifications for the bridge and approaches, including the grades thereof, should be prepared and finally approved before the condemnation proceedings were instituted. It was, however, expressly provided in section 1 of the act as amended (Laws 1896, p. 865, c. 716):

"That nothing shall be done under this act until the plans and specifications for the said bridge and approaches thereto, with the necessary abutments and arches as aforesaid, as well as the proposed changes hereby authorized in the grade lines of the streets and avenues approaching said bridge, shall have been submitted to and approved by the board of assessment and apportionment of said city."

Not only, therefore, had the plans and specifications been prepared before the commissioners of appraisal made the original awards, but this had been done pursuant to the mandate of the statute requiring it, as a condition precedent to the right of the city to institute eminent domain proceedings, under section 5 of the act as amended.

In these circumstances, therefore, the reasonable construction of the act is that the Legislature intended that all of the damages of the

landowners, not only for land taken and for damage to part of a parcel remaining caused by its diminution in size or form, but the additional damages caused by the approach to be erected on the part taken which would cut off access to the adjacent street, should also be awarded in the condemnation proceedings. With all the facts established at the time of the appraisal proceedings, it would be an unusual proceeding to relegate the property owner to the board of assessors for part of his damages. I would rather expect that the provision for damages for change of grade was designed to afford a remedy to property owners who were not parties to the appraisal proceeding, and this appears to be the fair construction of the act.

I am of opinion, therefore, that the act as amended did not authorize the assessors to award these damages. The statute requires this construction, regardless of whether or not the property owners were fully awarded in the eminent domain proceedings. I therefore vote to sustain the writ, and to annul the proceedings of the board of assessors in making the award.