THE PEOPLE OF THE STATE OF NEW YORK ex rel. GERTRUDE CRANE, as Administratrix of the Estate of GEORGE W. SAUER, Deceased, Respondent, *v.* WILLIAM C. ORMOND et al., Constituting the Board of Assessors of the City of New York, Defendants.

THE CITY OF NEW YORK, Appellant.

Streets — New York (city of) — change of grade — when erection of viaduct in and above a street constitutes a change of grade for which an abutting owner may recover damages.

Where a viaduct, built through a street of the city of New York between two points higher than the street, consists of a floor or roadway sixty-three feet in width supported on a double row of columns set ten feet from the curb lines, and from fifty to fifty-eight

feet above the surface of the street, so that access to the roadway carried by the viaduct is denied to an abutting owner, the erection of such viaduct constitutes a change of grade of the street, for which such owner whose property is injured thereby may recover damages under the provisions of the New York Consolidation Act and Greater New York charter, which make it the duty of the assessors where the established grade north of Sixty-second street of any street "shall be changed or altered in whole or in part," to estimate the damages suffered by abutting owners and to make an award therefor.

*People ex rel. Crane* v. *Ormond,* 178 App. Div. 151, affirmed.

(Argued June 12, 1917; decided July 11, 1917.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered May 22, 1917, which sustained a writ of certiorari and annulled a determination of the board of assessors of the city of New York dismissing, for want of jurisdiction, the relator's claim for damages due to a change of grade.

The following questions were certified: "1. Has the board of assessors of the city of New York jurisdiction to make an award to the relator for damages sustained by reason of the construction of the viaduct described in the affidavit for the writ of certiorari herein with respect to the buildings which were, between the years 1889 and 1897, on the premises formerly belonging to the relator's intestate, the late George W. Sauer, as described in said affidavit? 2. Has the board of assessors of the city of New York jurisdiction to make an award to the relator for damages sustained by reason of the construction of the viaduct described in the affidavit for the writ of certiorari herein with respect to the land formerly belonging to the relator's intestate, the late George W. Sauer, and described in said affidavit? 3. Do the facts set forth in paragraph IV of the return to the writ of certiorari herein constitute a defense to the relator's claim? 4. Do the provisions of chapter 512 of the Laws of 1894 con-

stitute a defense to the relator's claim before the board of assessors?"

The facts, so far as material, are stated in the opinion.

*Lamar Hardy,* Corporation Counsel (*Charles J. Nehrbas* and *Terence Farley* of counsel), for appellant. There has been no change of grade of One Hundred and Fifty-fifth street or of Eighth avenue within the meaning of section 873 of the Consolidation Act and section 951 of the charter of the city of New York. (*Uppington* v. *City of New York,* 165 N. Y. 222; *Transp. Co.* v. *Chicago,* 99 U. S. 635; *Atwater* v. *Trustees of Canandaigua,* 124 N. Y. 602; *People ex rel. City of New York* v. *Lyon,* 114 App. Div. 583; 186 N. Y. 545; *People ex rel. City of New York* v. *S. R. Realty Co.,* 149 App. Div. 651; 207 N. Y. 771; *Fuller* v. *City of Mt. Vernon,* 171 N. Y. 247; *Mayer* v. *City of New York,* 193 N. Y. 535; *Folmsbee* v. *City of Amsterdam,* 142 N. Y. 118.)

*John M. Harrington* and *Herbert H. Gibbs* for respondent. The erection of the viaduct constituted a change of street grade, for the damage resulting from which a statutory remedy was afforded by the laws in force at the time the viaduct was accepted by the city authorities; the relator's intestate never had his day in court and chapter 516, Laws of 1916, expressly preserves the very remedy invoked by the relator before the board of assessors. Consequently that board had jurisdiction of the relator's claim. (L. 1882, ch. 410, § 873; L. 1852, ch. 52, § 3; *Sauer* v. *City of New York,* 90 App. Div. 36; 180 N. Y. 27; 206 U. S. 536; *Smith* v. *Boston & Albany R. R. Co.,* 181 N. Y. 132; *People ex rel. City of New York* v. *Hennessy,* 157 App. Div. 786; 210 N. Y. 617; *People ex rel. Tytler* v. *Green,* 64 N. Y. 606; *People ex rel. Heiser* v. *Gilon,* 121 N. Y. 551.)

ANDREWS, J. In 1886 George W. Sauer became the owner of lots at the corner of West One Hundred and Fifty-fifth street and Eighth avenue in the city of New

York, and continued to be the owner until 1900. He died in 1905 and the relator became his administratrix.

Before he acquired title One Hundred and Fifty-fifth street and Eighth avenue had both been regulated and graded.

West of Mr. Sauer's property One Hundred and Fifty-fifth street ran to a bluff some seventy feet high. To the east it ran to what is known as the Macomb's Dam Bridge, also considerably above the level of the street.

Chapter 576 of the Laws of 1887 authorized the city to improve and regulate the use of One Hundred and Fifty-fifth street and for that purpose to construct an elevated iron roadway, viaduct or bridge for the passage of animals, persons, vehicles and traffic. Under the authority so conferred work was begun in 1890 and completed and accepted in 1893.

One Hundred and Fifty-fifth street is one hundred feet wide. The viaduct was built through it from the bluff to the bridge. It was sixty-three feet wide and its upper surface was a solid flooring with a paved driveway, and sidewalks upon each side. Where it passed Mr. Sauer's property it was from fifty to fifty-eight feet high. It was supported on a double row of iron columns each a foot and half square, set ten feet from the curb lines and forty-three feet apart east and west. At Eighth avenue a quadrilateral structure was built eighty feet wide, extending down Eighth avenue in front of Mr. Sauer's property some thirty feet. Except for the columns supporting this viaduct the surface of the streets was unchanged.

By section 873 of chapter 410 of the Laws of 1882 (the New York Consolidation Act) it was made the duty of the assessors where the established grade north of Sixty-second street of any street "shall be changed or altered in whole or in part" to estimate the damages suffered by abutting owners and to make an award therefor.

This has never been done with respect to the Sauer property.

Mr. Sauer did, however, begin two actions against the city. The first was at law for damages. The Appellate Division reversed a judgment in his favor and ordered a new trial, but no further action seems to have been taken. The second was in equity to restrain the city from continuing the viaduct. Here again he was beaten.

Section 951 of chapter 516 of the Laws of 1916 (amending the New York charter) provided that in all cases where a change of grade has been made prior to the taking effect of the act it shall, as to liability for compensation, be governed by the laws in force when the change was completed and accepted; but a claim in writing must be made to the assessors before July 1st, 1916.

Such a claim on behalf of the Sauer property was duly made.

This claim was dismissed by the assessors on the ground that they had no jurisdiction to entertain it. The Appellate Division has annulled this determination and has remitted the claim to the board for its action thereon.

The serious question in the case is whether the structure in One Hundred and Fifty-fifth street changed the grade of the street within the meaning of the acts of 1882 and 1916.

Wholly independent of the authorities upon the subject we are of the opinion that it did. It is true that the original surface of the street was not altered except by the erection of pillars. It is true that pedestrians and vehicles may still pass over it. But practically and substantially. One Hundred and Fifty-fifth street as now used passes on a level fifty feet or more above the Sauer property. This is the level adopted by travel east and west. To the street so used access was denied to Mr. Sauer. Necessarily his damage was great. Under such circumstances the court should be slow to adopt a technical construction of a phrase the result of which would be to deprive the relator of any remedy.

We also think that we are concluded upon this question. It is true that in the various cases brought by Mr.

Sauer the courts of this state have never said definitely that the structure constituted a change of grade. The first reference to the subject is in 44 App. Div. 307. Justice MCLAUGHLIN speaking of the viaduct says: It "was something more than a mere change of grade of the street." In the second case Justice LAUGHLIN (90 App. Div. 39) speaks of it as a double roadway above and below. On appeal this court suggested (180 N. Y. 30) that Mr. Sauer might have relief under existing statutes — referring necessarily to grade damages; notwithstanding that Judge BARTLETT in a dissenting opinion had argued that there was no change of grade.

But this second case was appealed to the United States Supreme Court. Upon that appeal (206 U. S. 536) Justice MOODY evidently thought that a change of grade had been effected. He says that the state courts have uniformly held that the erection of such a viaduct "is a legitimate street improvement equivalent to a change of grade; and that, as in the case of a change of grade," the abutting owner is not entitled to compensation. But he also quotes *Willis* v. *Winona City* (59 Minn. 27), where, speaking of a similar structure, the court says that it "in effect amounts merely to raising the grade" of the street; and that it makes "no difference in principle whether this was done by filling up the street solidly or, * * * by supporting the way on stone or iron columns."

Shortly after the *Sauer* case was in this court Judge O'BRIEN refers to it and interprets what we intended to hold. In 181 N. Y. 137, he says that at common law there was no liability for the change of grade of a street. It is sufficient as an authority to refer to the *Sauer* case. "It was held in that case that where the original street was elevated upon columns fifty feet above the original surface that it was a change in the grade of the streets within the meaning of the principle just referred to." Later Justice SCOTT, referring also to the *Sauer* case, says that this viaduct "was held in every

court to constitute a change of grade" (*People ex rel. City of New York* v. *Hennessy,* 157 App. Div. 788). This case was affirmed here in 210 N. Y. 617, without opinion, but no criticism was made of this statement.

In view of this history we do not think that additional authority with regard to this particular structure is needed. But if it were the *Hennessy* case supports our conclusion.

Two cases cited by the appellant (*People ex rel. City of New York* v. *Lyon,* 114 App. Div. 583, and *People ex rel. City of New York* v. *Sand Rock Realty Company,* 149 App. Div. 651), both of which we affirmed, are not inconsistent with this view. In *People ex rel. City of New York* v. *Lyon* the structure complained of was not upon the street, but upon land acquired outside its limits. In *People ex rel. City of New York* v. *Sand Rock Co.* the question was as to the construction of a particular statute. A structure was erected in Willis avenue. If it constituted a change of grade the abutters had no remedy unless they could point to some statute giving it to them. The statute to which they referred did not do so. It allowed damages for change of grade simply to owners upon cross streets, the grade of which might be elevated so as to reach the structure in Willis avenue.

There are various minor claims made by the appellants. We have examined them all and do not find in them any reason for reversing the conclusion of the Appellate Division.

Our holding is that such a structure as was erected in One Hundred and Fifty-fifth street constitutes a change of the grade of the street.

The order of the Appellate Division should be affirmed, with costs. The first and second questions certified to us should be answered in the affirmative; the third and fourth in the negative.

HISCOCK, Ch. J., CUDDEBACK, HOGAN, CARDOZO, POUND and CRANE, JJ., concur.

Order affirmed.