In the Matter of the Application of JAQUINO REALTY CORPORATION, Respondent, for a Peremptory Order of Mandamus against WILLIAM C. ORMOND and Others, Constituting the Board of Assessors of the City of New York, Appellants.

Second Department, May 21, 1926.

**Municipal corporations — mandamus to compel board of assessors of city of New York to determine damages to petitioner's property abutting boardwalk at Coney Island — claim is based on Greater New York Charter, § 951, on theory of change in grade of street — petitioner was awarded damages in condemnation proceedings — Laws of 1918, chap. 506, as amended, authorized condemnation of property and erection of elevated boardwalk — construction of elevated boardwalk not change in grade — foreshore not street within meaning of Greater New York Charter — all damages to which plaintiff is entitled were awarded in condemnation proceedings.**

The petitioner is not entitled to a peremptory mandamus order to compel the board of assessors of the city of New York to determine the amount of damages to petitioner's property which abuts on the foreshore of the Atlantic ocean at Coney Island, on the theory that under section 951 of the Greater New York Charter the petitioner is entitled to damages caused by the change of the grade of a street on which its property abuts, for the foreshore in front of plaintiff's property, over which the elevated boardwalk was erected, is not a street within the meaning of section 951 of the Greater New York Charter, authorizing the payment of damages arising out of a change of an established grade.

Chapter 506 of the Laws of 1918, as amended, not only authorizes the condemnation of property along the foreshore, for the purpose of erecting an elevated boardwalk, but also authorizes the erection of the boardwalk, and, therefore, the damages awarded to the petitioner in condemnation proceedings, in which a portion of its property was taken, included not only the value of the property acquired by the city of New York, but also all damages suffered by the petitioner to the remaining part of its property.

YOUNG, J., dissents.

REARGUMENT of an appeal by the defendants, William C. Ormond and others, constituting the board of assessors of the city of New York, from a peremptory mandamus order, granted by the Supreme Court at the Kings Special Term and entered in the office of the clerk of the county of Kings on the 3d day of December, 1924, directing the appellant board of assessors to ascertain and determine the damage, if any, sustained by respondent's real property by reason of the construction of the Coney Island boardwalk in front of and alongside said premises, pursuant to Greater New York Charter, section 951.   (See 215 App. Div. 712.)

*John J. Mead* [*George P. Nicholson, Corporation Counsel*, with him on the brief], for the appellants.

*Charles Lamb* [*Charles J. Nehrbas* with him on the brief], for the respondent.

KELLY, P. J.   Section 951 of the Greater New York Charter (Laws of 1901, chap. 466, as amd. by Laws of 1920, chap. 786) provides:

" § 951. Award of damages to land and buildings by reason of grading of streets; liability in such cases.   An abutting owner who has built upon or otherwise improved his property in conformity with the grade of any street or avenue established by lawful authority, and such grade is changed after such buildings or improvement have been erected, and the lessee thereof, shall be entitled to damages for such change of grade.   An owner who has built upon or otherwise improved his property prior to the original establishment of a grade by lawful authority and the lessee thereof, shall be entitled to damages caused by the grading of the street in accordance with such established grade.   The word lessee as used in this section shall include only such parties or persons whose lease does not expire in less than three years from the date of the completion and acceptance of the grading by the city authorities.   Except as herein provided, there shall be no liability for originally establishing a grade or for changing an established grade.   Damages to such buildings and improvements shall be ascertained and assessed by the board of assessors in the manner hereinafter provided."

In March, 1924, the Jaquino Realty Corporation, respondent, applied to the board of assessors of the city of New York for damages pursuant to the Greater New York Charter, section 951, because of the construction of the boardwalk at Coney Island, in the borough of Brooklyn, alleging that the boardwalk which was some thirteen feet over the beach constituted a " change of grade " in a street.   The corporation, owning a plot of land at the southwest corner of Surf avenue and West Thirty-seventh street, about 100 feet in width on the south side of Surf avenue, running south some 265 feet to the beach, alleges in the claim filed that the construction of the boardwalk, elevated as it is over the sand beach, damages the upland to the extent of $35,000.   On May 27, 1924, the board of assessors dismissed the claim upon the ground that on the facts presented they had no jurisdiction to allow damages to the property owner, and for the further reason that in condemnation proceedings then pending in which the city was seeking to condemn a narrow strip of the beach front of the property for the purpose of erecting the boardwalk, the property

owner would be compensated for any consequential damage sustained by reason of the construction of the boardwalk.

The boardwalk was constructed pursuant to the provisions of Laws of 1918, chapter 506, as amended by Laws of 1920, chapter 731, Laws of 1921, chapter 610, Laws of 1923, chapter 315.* Of course, there has always existed a foreshore or ocean beach as Coney Island. By these statutes the city of New York was expressly empowered to construct an elevated boardwalk on the beach, and the legislation referred to provided for raising the money necessary for such construction by assessment and also expressly authorized the city to acquire by condemnation any rights of the property owners abutting the beach necessary in the premises, and also to acquire additional land to accommodate the structure. The statute also provided that any structure or boardwalk erected over the beach level should be at such elevation as to allow free access underneath the same. The city found it necessary to acquire a narrow strip of the private property abutting on the beach, which was practically a widening of the beach. Under the statute the land so acquired became part of the beach. And in the case of the property owner, respondent, a comparatively narrow strip of the ocean front was so acquired by condemnation for the purposes stated. In March, 1924, at the date of the application of the Jaquino Realty Corporation to the board of assessors for damages for change of grade, and on May twenty-seventh when their application was dismissed, these condemnation proceedings, commenced in December, 1920, were pending, resulting in a final decree in December, 1925, in which the Jaquino Realty Corporation was awarded damages ascertained by ascertaining the value of its entire upland property between Surf avenue and the ocean beach before the taking, and after the taking by the city of 8,965 square feet, the strip 102 feet in width on the ocean front, for the purpose of widening the beach for the erection of the boardwalk under the provisions of the statutes cited. The property owner was awarded the sum of $44,825, and in addition was awarded $1,539.30 " for extinguishment of riparian rights," making an aggregate award of $46,364.30.

The realty corporation having received this substantial award, now asserts a claim for damages on the theory that the erection of the elevated boardwalk on the ocean beach as widened, pursuant to the statute, was a change of grade in a street, and demands $35,000 in addition to the $46,364.30. The final decree in the condemnation proceeding recites that the total award for damages

---

* See Laws of 1924, chap. 566; Laws of 1923, chap. 476, as amd. by Laws of 1926, chap. 826.— [REP.

in this condemnation proceeding involving the widening of the beach for the erection of the boardwalk, aggregated $2,181,121.64. The proceeding involved the entire beach front from West Thirty-seventh street to the Ocean Parkway, a distance of some two miles. If this particular property owner is entitled to additional damages based upon a change of grade in a street, under section 951 of the charter, every property owner along the line of the improvement may assert a similar claim.    It will be perceived that the question presented is of considerable importance.

Passing the contention of the city that it is notorious that the construction of this boardwalk has doubled and in some cases trebled the value of the property which, like the parcel in the case at bar, is given direct access to the boardwalk, with access to the ocean beach under the boardwalk practically unimpaired, the questions presented are, *first,* whether the construction of this elevated boardwalk is a change in the grade of a street or avenue described in section 951 of the charter, and, *second,* whether the damage, if any, occasioned to the remaining property by the boardwalk was not necessarily included in the award already made in the condemnation proceedings.

The board of assessors having dismissed the application for damages for change of grade, the property owner applied for a peremptory order of mandamus directing the board of assessors " to perform their duties as such board of assessors, as prescribed by section 951 of the Greater New York Charter, in relation to hearing and determining the construction of the Public way or street, known as the Coney Island Boardwalk, in front of petitioner's premises," and the court at Special Term has granted the application.    The board of assessors appeals from this order.    The learned justice at Special Term held that the construction of the boardwalk constituted a change of grade in a street, citing *People ex rel. Crane* v. *Ormond* (221 N. Y. 283).    That case involved the construction of a viaduct in One Hundred and Fifty-fifth street, Manhattan.    The street below as originally graded was left in its former condition, except for the erection of columns to support the structure.    It was held that the construction of the viaduct in that case constituted a change of the grade of the street.    The learned justice said that the mere fact that the boardwalk was limited to pedestrian traffic while the viaduct in One Hundred and Fifty-fifth street was also open to vehicular traffic was not important.    He said the more important and difficult question was whether section 951 was applicable to the change or establishment of a grade on a public beach; that unless the petitioner could have relief under that section he is remediless. for at common law a

modification in grade gave no right to recover damages. He said that this fact should not move the court to construe the statute so as to disregard its plain language; still, in view of the general policy manifested in our statutes to permit the recovery of damages by those injured by the raising or lowering of a grade, a liberal construction of the provisions of section 951 in line with this general policy was proper. He held that the public beach, or at least the boardwalk, must be regarded as a street within the meaning of section 951. He said it had practically all the legal incidents of a street. He referred to the claim of the city that the petitioner had suffered no damage, but rather that the value of its property had been enhanced, but said that question was not before the court; that the board of assessors should determine the question of damages upon the merits and that if it was decided that petitioner had sustained no damage, no award, or at least a mere nominal award, would be made.

I am constrained to differ with the learned justice at Special Term. In my opinion the construction of the boardwalk under the statutes referred to was not a change of grade in a street or avenue in the city of New York such as was contemplated in section 951 of the charter. The ocean beach or foreshore, while possessing some of the characteristics of a city street in that the public from time immemorial have had the right to pass and repass upon it, has never been considered a street or avenue in the sense in which those words are employed in municipal charters. The foreshore with its historical past, which centuries ago fomented disputes between the Crown and the subject in England, and which has been the subject of innumerable decisions in the courts in this State, some of them affecting this identical Coney Island foreshore (*Mulry* v. *Norton*, 100 N. Y. 424; *Town of Brookhaven* v. *Smith*, 188 id. 74; *Barnes* v. *Midland R. R. Terminal Co.*, 193 id. 378; *Tiffany* v. *Town of Oyster Bay*, 209 id. 1; *People* v. *Steeplechase Park Co.*, 218 id. 459, 470; *Silver* v. *Woodbury*, 230 id. 627), has never been in the category of a city street or avenue. It existed generations before city streets or avenues were known. The property owners, including the Jaquino Realty Corporation, owning property abutting on the ocean beach, possessed peculiar riparian rights and other privileges unknown to abutters upon city streets and avenues. In my opinion, they were not abutting owners upon a street or avenue. There never was any established grade for the ocean beach at Coney Island, and indeed there could be no established grade on this strip of sand exposed to the inroads of the sea and the constant changes in the line of mean high water and low water, by accretion and avulsion, with which we are all familiar

and which have been commented upon in many of the decisions cited. (See Special Term opinion in *Silver* v. *Woodbury, supra,* in record on appeal.) And when the Legislature authorized the construction of a boardwalk for pedestrian traffic over this ocean beach, with continued right of access to and from the ocean underneath the structure, this in my opinion did not constitute the laying out of a street or avenue in the city within the meaning of those words as employed in the Greater New York Charter. To say that this construction was a change of grade or alteration of a grade within the meaning of section 951, seems to do violence to the clear intent of the statute.

Section 951 of the charter is part of title 2 of chapter 17, relating to assessments for local improvements other than those confirmed by a court of record. It may be doubted whether the board of assessors have the power to determine such damage and assess it upon property benefited thereby when the alleged change of grade is a mere incident to a proceeding in which the damages are determined and assessed by the court. (*Matter of Mayor* [*White Plains Road*], 106 App. Div. 133.) The section is found in a part of the charter which relates exclusively to assessments for local improvements other than those confirmed by a court of record. (*Matter of Mayor* [*Perry Avenue*], 118 App. Div. 874.) The damages, if any, are determined by the court. The case of the One Hundred and Fifty-fifth street viaduct, cited by the learned justice, has reference to a viaduct constructed in an established city street in the borough of Manhattan. The situation does not appear to be at all similar to that existing in the case at bar. This boardwalk on the ocean beach was a peculiar and unique structure so far as ocean beaches in New York city are concerned, constructed upon the beach and upon property to be acquired for a widening of the beach under the statute.

In the second place, it seems to me that any damage sustained by the upland owner abutting on the beach, by reason of the construction of the boardwalk, must necessarily have been determined in the proceeding to acquire the strip of the petitioner's property required for the widening of the beach. Thus we find in the record of the proceedings in which the city acquired the additional strip of land for the purpose of the boardwalk, the following question on cross-examination addressed to the expert called by the property owners to testify to the damage caused by the taking of the strip: " Q. What rights did you assume the owner would have with respect to access to the beach after the acquisition of title by the city here? A. I understood the pro-

6

ceeding gave him the right over and under a structure that might be erected in front, a so-called boardwalk; " and " Q. In appraising this property with respect to its situation and use after the taking, was your attention directed to the provisions of the legislative act under which this improvement has been authorized by the Legislature? A. Yes, sir." Again in referring to the basis for the expert's estimate of the value of the upland left after the taking of the strip in question, the expert is asked: " Q. You assumed that he lost his right of access [*i. e.,* to the ocean beach]? A. No, I did not assume that he lost all of his right of access. It was restricted, subject to what may be put there in the form of a so-called boardwalk. What else might be put there, I do not know." The printed record on appeal contains, " Section of Map of the Boardwalk as Proposed to Be Erected on the ' Public Beach ' as Authorized by Resolution of the Board of Estimate and Apportionment, Adopted July 29th, 1921," which shows the line of the boardwalk at the westerly end of the improvement in front of the upland of the respondent corporation.

The proposed boardwalk was the basis of this proceeding under the statute. As in the case of condemnation of private property for the public use for a railroad right of way, the award made is for the land actually taken and for the consequential damages to the remaining property. When part of a tract of land is taken, just compensation includes all damages to the remainder of the property caused by the public use. (2 Lewis Em. Dom. [2d ed.] § 464.) Where the proposed use of the property taken will depreciate the value of that which is not taken, such proposed use can be regarded and the depreciation arising therefrom be awarded as part of the consequential damages suffered from the taking. (*Bohm* v. *M. E. R. Co.,* 129 N. Y. 576, 585; *Henderson* v. *N. Y. C. R. R. Co.,* 78 id. 423; *South Buffalo R. Co.* v. *Kirkover,* 176 id. 301.) The proper rule with respect to damages in the condemnation proceeding in the case at bar was, therefore, to award to the owners not only the value of the land actually taken, but the consequential damages from the use to which the land taken was to be put. (*People ex rel. City of New York* v. *Lyon,* 114 App. Div. 583.)

The erection of the boardwalk in the case at bar was not only incidental to the acquisition of petitioner's property; it was the very purpose for which the land was acquired. The statutes authorizing the acquisition of petitioner's property for the widening of the beach also provided for the erection of the boardwalk on that property. The award in the condemnation proceeding is based upon the difference in value of the entire property of the petitioner before and after the construction of the boardwalk.

In my opinion any damage sustained by the remainder of petitioner's property by reason of the boardwalk was in the nature of consequential damage and should have been proved and awarded in the condemnation proceeding. And judging from the amount of the award made, this is what was done in the case at bar. I recommend:

That peremptory mandamus order to the board of assessors of the city of New York, directing them to determine and assess damages to petitioner's property by reason of change of grade under section 951 of the Greater New York Charter, be reversed upon the law and the facts and the application denied, with costs.

RICH, MANNING and KAPPER, JJ., concur; YOUNG, J., dissents.

On reargument, peremptory mandamus order to the board of assessors of the city of New York, directing them to determine and assess damages to petitioner's property by reason of change of grade under section 951 of the Greater New York Charter, reversed upon the law and the facts, and application denied, with costs.