PEOPLE ex rel. CITY OF NEW YORK v. SANDROCK REALTY CO. et al.

(Supreme Court, Appellate Division, First Department.    March 22, 1912.)

1. EMINENT DOMAIN (§ 96*)—ACQUISITION OF LAND FOR PUBLIC PURPOSES—
   DAMAGES.
   Where land was taken to widen a street on which a bridge approach
   was to be constructed, as authorized by Laws 1894, c. 147, as amended
   by Laws 1897, c. 664, and not for use for the construction of the ap-
   proach, the owner was not entitled to damages to the part of his land
   not taken by reason of the construction of the approach, when treating
   the proceeding as a condemnation proceeding to determine damages for
   land taken for public use.
   [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 245–
   249; Dec. Dig. § 96.*]

2. EMINENT DOMAIN (§ 101*)—ACQUISITION OF LAND FOR PUBLIC PURPOSES—
   DAMAGES—"CHANGE OF GRADE."
   Laws 1894, c. 147, as amended by Laws 1897, c. 664, authorizing the
   construction of a bridge with approaches extending along W. avenue to
   134th street, and providing for payment of damages for change of grade
   for land taken and for damages sustained by owners fronting on the
   avenue between 132d and 133d streets, and authorizing the taking of
   land to widen the avenue between 133d and 134th streets, do not author-
   ize the award of damages to owners of property abutting on the avenue
   in the block between 133d and 134th streets, where the avenue remains
   at the old grade, and in the center of it, as widened by acquisition of
   land, is the approach, though the same interferes with the easements of
   light, air, and access; the approach not being a "change of grade."
   [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 269,
   270; Dec. Dig. § 101.*
   For other definitions, see Words and Phrases, vol. 2, pp. 1055, 1056;
   vol. 8, p. 7599.]
   Laughlin, J., dissenting.

Certiorari by the People, on the relation of the City of New York,
against the Sandrock Realty Company and others, to review proceed-
ings of the board of assessors of the city of New York. Writ sus-
tained, and proceedings before board of assessors dismissed.

Argued before INGRAHAM, P. J., and LAUGHLIN, Mc-
LAUGHLIN, CLARKE, and MILLER, JJ.

Clarence L. Barber, for relator.

A. C. & F. W. Hottenroth (Morgan J. O'Brien, of counsel), for de-
fendants.

MILLER, J.    This case is before us on a writ of certiorari to re-
view the proceedings of the board of assessors in which an award was
made to the respondent, the Sandrock Realty Company, for damages
caused by change of grade of Willis avenue as originally laid out.
By chapter 147 of the Laws of 1894, the Legislature authorized the
commissioner of public works of the city of New York to construct
a bridge with suitable approaches from a point at the intersection of
125th street and First avenue northeasterly across the Harlem River
to and along Willis avenue to 134th street, and to make such change
in the grade lines of the streets or avenues approaching said bridge

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

as might be necessary. We are concerned with the construction of sections 3 and 4 of that act which are as follows:

"Sec. 3. The expense of making all necessary surveys, preparing the plans and specifications, and of constructing the said bridge and approaches thereto, with the necessary abutments and arches as aforesaid, shall not exceed two million dollars, and such further sum for paying awards for damages by reason of the change of grade of streets or avenues approaching the same authorized by this act, as may be awarded by the board of assessors of the said city, whose duty it shall be to estimate the damage which each owner of land fronting on such street or avenue will sustain by reason of such change to such land, or to any improvements thereon, and make a just and equitable award to the amount of such damage to the owner or owners of such lands or tenements fronting on such street or avenue, and opposite thereto, and affected by such change of grade. The comptroller of said city shall, from time to time, when directed by the board of estimate and apportionment prepare and issue bonds of said city, bearing interest at not more than four per centum per annum, and redeemable from time to time, but not less than twenty years after the date thereof, for the purpose of defraying the expense of making all necessary surveys, preparing plans and specifications and of constructing the said bridge and approaches thereto, with the necessary abutments and arches as aforesaid, and for paying the awards which may be made for damages by reason of any change of grade as aforesaid. Such bonds shall not be sold for less than the par value thereof, and the moneys received from the sale of the said bonds shall be deposited in the treasury of said city, and shall be drawn and paid by the comptroller of the said city for the several objects and purposes provided in this act, upon vouchers in a form to be prescribed by the said comptroller.

"Sec. 4. With the consent and approval of the board of estimate and apportionment first had and obtained the commissioner of public works, for and in behalf of the mayor, aldermen and commonalty of the city of New York, is hereby authorized to acquire title in fee to any land which he may deem necessary for the purpose of the construction of the said bridge and approaches, with the necessary abutments or arches as aforesaid, and to acquire any right or easement which 'it may be necessary to take for the purpose of constructing that portion of the approach to said bridge between Harlem River and One Hundred and Thirty-Second street, which said portion of said approach shall be a viaduct built of steel or iron, and to that end the said commissioner may make application to the Supreme Court in the First judicial district for the appointment of commissioners of estimate, specifying in such application the lands sought to be acquired for the purpose aforesaid. The provisions of law relating to the taking of private property for public streets or places in the said city are hereby made applicable as far as may be necessary to the acquiring of the said land as aforesaid. The amount or amounts awarded for the said land and the expense of the proceedings hereby authorized for the acquiring of the same shall form part of and be included within the expense of constructing the said bridge and approaches thereto, with the necessary abutments and arches authorized by the third section of this act."

[1] Willis avenue, as originally laid out, was 100 feet in width. Proceeding north from the river, it is intersected by 132d street, Southern Boulevard, or 133d street, and 134th street, in the order named. The approach to the bridge, as it was finally completed in August, 1901, occupies 70 feet of the center of Willis avenue. For the purpose of widening Willis avenue between 134th street and Southern Boulevard, the city on May 22, 1897, took title to a strip 35 feet in width on each side, thus making on each side of the bridge approach a street 50 feet in width. This and three other cases, argued with it, involve lots on the east side of Willis avenue, between Southern Boulevard and 134th street, from which said 35-foot strip

was taken. An award of $18,780 was made to the owner of the lots at the time of the taking for the land taken. In their report, the commissioners of estimate said:

"In making the final awards, the commissioners assume that the fee to the lands taken vests absolutely in the city, subject only to the public use of a strip 50 feet wide on either side of the approach as 'a public street forever."

It thus appears that the theory upon which the award was made accorded with the actual fact; i. e., that the land was taken to widen the street, and was not to be used for the construction of the bridge approach. Treated strictly as a condemnation proceeding to determine the damages for land taken for public use, the claimant was not entitled to damages to the part not taken by reason of the construction of the bridge approach, for the part taken was not to be used for that purpose. Therein the case differs from People ex rel. City of New York v. Lyons, 114 App. Div. 583, 100 N. Y. Supp. 62. After the actual construction of the bridge approach, claims for damages on account of the construction of it were presented to the board of assessors by the owners of the lots from which the 35-foot strip was taken. The claimant in this case, the owner of two lots, was allowed $10,000. The expert for the city testified that the land damage was $5,000.

[2] The claim is plainly a meritorious one; but the question preliminary to a consideration of its merits is whether the statute gave the board of assessors jurisdiction to make the award, and, after carefully analyzing it, I have been reluctantly forced to the conclusion that it did not. It is to be observed that the Legislature made two different provisions for two different classes of damage—one for damages for change of grade, and the other for damages for land or easements taken. The first, pursuant to section 3, were to be awarded by the board of assessors; the second, pursuant to section 4, by commissioners of estimate. It is plain that the Legislature regarded the easements of light, air, and access of the abuttors on Willis avenue as property to be taken and paid for. The act as first passed authorized the city "to acquire any right or easement which it may be necessary to take for the purpose of constructing that portion of the approach to said bridge between the Harlem River and 132d street." By chapter 664 of the Laws of 1897, it was provided that the commissioners of estimate should estimate the damages, if any, to be sustained by the owners of property fronting on Willis avenue, between 132d and 133d streets, or Southern Boulevard, by reason of the construction and maintenance of the bridge approach, and should include in their report the awards for such damages. It is obvious that the reason for not taking in the block between 134th street and Southern Boulevard was that Willis avenue in that block was to be widened so as to provide for a street 50 feet in width on either side of the approach at the original grade of the street.

It is immaterial that it turned out that the Legislature was wrong in supposing that, with the widened street, the bridge approach would occasion no damage to the abutting owners because of interference

with their easements of light, air, and access; for the conclusion is irresistible by reason of the specific provisions for the award of damages to abuttors on Willis avenue, first from the river up to 132d street, and later from 132d to Southern Boulevard, that the Legislature intended that the commissioners of estimate should award the damages to said abuttors for interference with easements of light, air, and access, and that it limited their jurisdiction on that head to property between the river and the Southern Boulevard. The language of the act also shows that the Legislature regarded the interference with such easements as a taking; the damages for which were to be assessed in the usual way in condemnation proceedings. It is of no consequence that in legal effect such an interference would not constitute a taking within the meaning of the fourteenth amendment of the Constitution of the United States. See Sauer v. City of New York, 206 U. S. 536, 27 Sup. Ct. 686, 51 L. Ed. 1176.

It being demonstrated, then, that the Legislature intended by section 4 of chapter 147 of the Laws of 1894, and by chapter 664 of the Laws of 1897, to provide for compensation to those abuttors on Willis avenue who, it was thought, would suffer damage from the interference with their easements of light, air, and access, we are prepared to construe said section 3, above quoted, and to determine what damages were to be awarded by the board of assessors; i. e., "damages by reason of the change of grade of streets or avenues approaching the same"—i. e., "said bridge and approaches thereto." It is plain that, when the original act was passed, it was thought possible that a plan might be adopted which would necessitate a change of grade of the streets intersecting Willis avenue; and, with that possibility in mind, the Legislature provided for damage to property owners affected by such change of grade. While the construction of the viaduct or approach in the center of the street may be deemed a regulation thereof, it is plain that it was not the kind of change of grade that the Legislature provided for by section 3. The street in front of the claimant's premises remains at the old grade. In the center of it, as widened, is a structure which interferes with the claimant's easements of light, air, and access. The Legislature did not provide for the case, and the court cannot supply that omission by adopting a construction which the statute was plainly not intended to bear.

The writ should be sustained, and the proceedings before the board of assessors dismissed.

INGRAHAM. P. J.. and McLAUGHLIN and CLARKE, JJ., concur.

LAUGHLIN, J. (dissenting). Willis avenue was a public highway of the city of New York. The Legislature, by section 1 of chapter 147 of the Laws of 1894, authorized the construction of a bridge over Harlem River to connect said avenue, and a change of grade of the avenue to form an approach to the bridge at the proper elevation. In order to afford sufficient street facilities on the incline formed by the approach, and to afford access to the property abutting on the

street at the sides of the approach, but on a lower level, the Legislature by the same act authorized the condemnation of lands, and pursuant to such authority a strip of land 35 feet in width was taken on either side of the avenue, in the block between Southern Boulevard and 134th street, for the purpose of widening the avenue. The incline forming the approach to the bridge commenced near 134th street, and from that point toward Southern Boulevard and the Harlem River the grade of 70 feet of Willis avenue, which was 100 feet in width, was changed, forming a permanent obstruction directly in front of the property of the respondent company, leaving, however, the strip of 35 feet so taken and 15 feet of the original avenue, making 50 feet of street in all, between the remaining lands of the respondent company and the exterior lines of the incline forming the approach to the bridge. It is thus seen that the incline forming the approach to the bridge was constructed wholly within the exterior lines of Willis avenue as it formerly existed, and that no part of it was nearer than 15 feet to the lands so condemned to widen the avenue.

It is perfectly plain, I think, that the condemnation commissioners were not authorized to make, and did not attempt to make, an award for damages to the lands of the respondent company caused by the construction of the approach to the bridge, which, as has been seen, opposite the lands of the said respondent company constituted a change of grade of the central part of the avenue. The record shows that the condemnation commissioners followed the general rule, and determined the value of the parcel as a whole before the taking and the value of the parcel remaining after the taking, in view of the use to which the *lands taken* were to be appropriated. The lands thus taken were to be appropriated and used for *street purposes only;* and no part of the approach or viaduct was to be erected thereon, and there was to be no change of grade of the lands thus taken. In these circumstances it is quite clear, I think, that the owners of land, part of which was thus taken in the block between Southern Boulevard and 134th street, whose remaining lands abutted on the street, were entitled to an award by the board of assessors of any damages caused by such change of grade in front of their property; for by the express provisions of section 3 of the act the board of assessors were commanded to estimate and award damages to each owner of land fronting on the street caused by the change of grade.

The fact that the Legislature, by section 4 of the act *erroneously* assumed that, by the change of grade where there was to be a high steel viaduct between 132d street and the Harlem River, the easements of abutting property owners would there be taken, for which they would be entitled to damages to be determined by a constitutional condemnation commission, and by chapter 664 of the Laws of 1897 extended that theory to the block between 132d street and 133d street, but not to the block in question, does not aid the relator; for if the erection of the viaduct between 132d street and the Harlem River constituted a taking of *easements,* as the Legislature plainly supposed, it would not have been competent for the Legislature to confer au-

thority on the board of assessors to estimate the damages, which, doubtless, accounts for those damages having been sent to a *constitutional* condemnation commission. The Legislature had fully conferred authority on the board of assessors to ascertain and award damages for *a change of grade,* and that authority remained applicable to lands in the block between Southern Boulevard and 134th street, where the Legislature evidently considered that, since the incline started just above that block, it there only constituted a change.

A change of grade for a street use, however, does not constitute a taking of private easements for which compensation must be made. Sauer v. City of New York, 206 U. S. 536, 27 Sup. Ct. 686, 51 L. Ed. 1176; Id., 180 N. Y. 27, 72 N. E. 579, 70 L. R. A. 717; Id., 90 App. Div. 36, 85 N. Y. Supp. 636. The Legislature, therefore, was under no obligation in the case at bar either to provide for an award of damages for interference with easements or for the change of grade, either by the condemnation commissioners or the board of assessors; but it evidently intended to provide for both, and it was competent for it to do so.

I find nothing in the amendments to the act indicating that the Legislature intended to repeal the authority of the board of assessors to award damages for the change of grade, which, I think, was originally clearly conferred with respect to Willis avenue by section 3 of the act. By the original act the authority to award such damages was, upon an erroneous theory, as already stated, conferred upon the condemnation commissioners with respect to lands abutting on the avenue between Harlem River and 132d street, and such authority was later extended to the next block to the north (chapter 664, Laws 1897); but the authority conferred upon the board of assessors by section 3 of the original act with respect to damages for change of grade in other blocks, was not only never repealed, but it was re-enacted by chapter 607 of the Laws of 1901.

I am of opinion, therefore, that the board of assessors were authorized to award damages for the change of grade of Willis avenue caused by the incline forming the approach to this bridge, and I vote to affirm the proceeding and to dismiss the writ.

---

PEOPLE ex rel. CITY OF NEW YORK v. GOOSEN et al.

(Supreme Court, Appellate Division, First Department. March 22, 1912.)

Clarence L. Barber, for relator.
A. C. & F. W. Hottenroth (Morgan J. O'Brien, of counsel), for defendants.