[No. 7926.]

## THE CITY OF COLORADO SPRINGS v. STARK.

CONSTITUTIONAL LAW—*Private Property Damaged by Public Improvement—Municipal Corporation Liable.* A city is liable for injuries occasioned to private property by the construction of a subway, in a public street, which allows passage by the public under the tracks of a railway company. (387)

The fact that the railway company constructs the improvement under license of the city does not change the result. *Denver v. Bayer* 7 Colo. 113; *Idaho Springs v. Woodward*, 10 Colo. 104; *Sorenson v. Greeley*, 10 Colo. 369; *Denver Co. v. Bourne*, 11 Colo. 59 distinguished, as announcing the just and salutary rule that where an improvement is made for the benefit of private individuals, these must bear the burden of making compensation for any injury occasioned thereby. (387, 388)

*Error to El Paso District Court.*—Hon. JAMES OWEN, Judge.

Mr. C. L. McKESSON, Mr. HENRY C. HALL and Mr. J. L. BENNETT, for plaintiff in error.

Mr. CLARENCE M. HAWKINS and Mr. JOHN R. SMITH, for defendant in error.

Mr. JUSTICE BAILEY delivered the opinion of the court:

On February 15th, 1912, E. R. Stark, defendant in error, filed an amended complaint in the district court

of El Paso county, against the City of Colorado Springs, plaintiff in error, alleging damages to his property abutting on Pike's Peak Avenue in that city, caused by the construction of a subway in such avenue, under the tracks of the Atchison, Topeka & Santa Fe Railway Company, hereinafter called the company. The facts are undisputed. Pike's Peak Avenue is one of the main thoroughfares of the City of Colorado Springs, extending from the business district east to the corporate limits, and was crossed by the tracks of the company at the time its road was constructed through the city. The crossing is near the company's passenger depot, which is situated approximately 200 feet south thereof and on the west side of the right of way. Because of increased business of the company and the nearness of its depot to the crossing, Pike's Peak Avenue, which is crossed by the railroad there at grade, was at that point closed to traffic a large part of the time. In the spring of 1909 the city passed an ordinance providing for the vacation of a portion of Pike's Peak Avenue, and another street, and authorizing the company to construct a subway at the crossing. The property involved consists of three contiguous lots on the north side of Pike's Peak Avenue, north of the subway, adjacent to the company's right of way and on the west side thereof. The subway, as constructed by the company under and by virtue of the ordinance, was 50 feet wide, in the center of Pike's Peak Avenue, beginning at a point 250 feet west of the west line of its right of way, passing under the tracks with a clearance of about 12 feet, and having a grade of approximately eight per cent. This left portions of the street about 45 feet wide on each side of the excavation, which were graded and paved at from three to four and one-half feet higher than the established grade along the south line of the lots, that is, graded practically on a level from where the subway begins to dip to the railroad tracks. A bridge 38 feet wide was constructed over the east end of the subway, next to the west side of and parallel with the tracks; also a cement wall 75

feet long and 6 feet high, extending north from the inner side of the bridge, along the right of way and nearly paralleling the east side of plaintiff's property, and across the sidewalk running east and west in front thereof, on Pike's Peak Avenue. Thus the lots were about four feet lower than the newly established street grade, and from two to twelve feet higher than the subway grade. Free and easy access to them from one side, by the sidewalk which had theretofore extended east across the tracks, was made impossible, and ingress and egress were substantially impeded. For the damage thus occasioned plaintiff sued the city.

The city demurred to the complaint generally, and specifically for the reason that the company was a necessary party. The demurrer was overruled, and the defendant relies for a defense on the ground that the company alone is liable. At the close of plaintiff's evidence the city moved for non-suit, because the evidence was insufficient to sustain a verdict against the defendant; for the further reason that the city did, or omitted to do, no act for which it was liable to the plaintiff; and that the evidence showed that the company alone was liable for the damage which plaintiff had sustained. This motion was overruled and exceptions reserved. The jury returned a verdict for plaintiff for $4,000. A motion for a new trial was overruled. Judgment was entered upon the verdict, to review which the defendant brings the case here.

Counsel agree that a single question is presented for determination. Is the city liable to the defendant in error for injury to his property resulting from the construction of the subway in Pike's Peak Avenue by the company?

Section 15 of article II of the constitution provides that "private property shall not be taken or damaged, for public or private use, without just compensation." All of our decisions involving a construction of this provision in the class of cases under consideration are in harmony. The difficulty arises in fixing liability in individual cases. The facts disclosed are closely analo-

gous to those in *Pueblo v. Strait,* 20 Colo. 13. The only ground upon which counsel for plaintiff in error challenge that authority is that the question of liability of the company was not there raised. It is not apparent how that can materially affect the rule as to the city's liability. The general principles announced in that decision have been approved and followed.—*Denver v. Bonesteel,* 30 Colo. 109, 69 Pac. 595; *Shutt Inv. Co. v. Pueblo,* 11 Colo. App. 439, 54 Pac. 644; *Leiper v. Denver,* 36 Colo. 110, 35 Pac. 849, 7 L. R. A. (N. S.) 108, 118 Am. St. Rep. 101, 10 Ann. Cas. 847; *Harrison v. Tramway Company,* 54 Colo. 593, 131 Pac. 409, 44 L. R. A. (N. S.) 1164. The rule is stated in the *Strait* case, citing *Denver v. Bayer,* 7 Colo. 113, 2 Pac. 6, and other authorities, to the effect that for an injury resulting from reasonable or ordinary change and improvement of a street, for the benefit of the public, if made in a careful and skilful manner, no recovery can be had by the injured property owner; but that such rule does not apply where the municipal authorities have made an unusual change in the street, or put it, or allowed it to be put, to an extraordinary or unanticipated use. It was held in that case that the building of a viaduct in a street by the city, whereby ingress and egress to abutting property was adversely affected, is such an extraordinary use of the street as could not have been anticipated at the time of dedication, and that the abutting property owner could recover for injury to his property on that account. This rule is equally applicable to subways, and the facts disclosed by this record clearly bring the case within the announced rule. The subway was, and could only have been, constructed upon the authority of the city; it was an improvement primarily for the benefit of the public, and since it was not an ordinary and usual use of the street, the city is liable for damages occasioned by its construction. Such liability, under the facts disclosed by this record, has been affirmatively declared again and again in this jurisdiction, and the judgment before us must therefore be affirmed. The municipality cannot shift or evade liability by procuring or

permitting another to do the work. Whether the company is also liable is a matter of no concern here. Cases from other jurisdictions, under different constitutional, statutory and charter provisions have no application.

To support the contention that the city is not liable, counsel rely upon *City of Denver v. Bayer, supra,* followed in *Idaho Springs v. Woodward,* 10 Colo. 104, 14 Pac. 49, and *Idaho Springs v. Filteau,* 10 Colo. 105, 14 Pac. 48; *Sorensen v. Town of Greeley,* 10 Colo. 369, 15 Pac. 803; *Denver & R. G. Ry. Co. v. Bourne,* 11 Colo. 59, 16 Pac. 839. A careful examination of these cases discloses that, contrary to those on which this decision is based, the injuries for which recovery was sought grew out of damage to private property for private benefit. The distinction is noted and emphasized in the *Bayer* case in the following language:

"But the construction of an ordinary railroad is not, as we have found, an improvement of the street for the convenience and benefit of the local public; it is a private enterprise, for private profit."

These decisions are based upon the broad and equitable principle that those who reap the benefits of improvements must bear the burden of compensating for any loss occasioned in securing them. They depend upon the proposition that where the use inures primarily to the profit and advantage of individuals, or to private or *quasi* public corporations, just compensation for injury thereby occasioned must be made to the abutting property owner by those so benefited. In the case at bar the improvement was in the broadest sense of a public character, which could not have been reasonably anticipated; it was primarily for the safety, benefit and convenience of the public, and the city is in the first instance, under the well settled rule in this jurisdiction, clearly and unquestionably liable for damage to private property occasioned by its construction, on the highly equitable and wholesome principal that since the benefit is general the cost incurred to obtain it should be generally distributed. This doctrine is pertinently stated in *Pueblo*

*v. Strait, supra,* at page 21, 36 Pac. 792, 24 L. R. A. 392, 46 Am. St. 273, as follows:

> "The rule is certainly more reasonable and just which requires compensation to be made by the municipality out of the common fund, for an injury occasioned by an improvement for the public convenience, than to require the individual to suffer the entire loss."

In *Harrison v. Tramway Company, supra,* the general rule of liability or non-liability of municipalities to abutting property owners for changes and improvements made in streets is succinctly and lucidly stated at page 598 in this language:

> "Moreover, it is certain from our decisions that a municipality in this state may use or authorize its streets to be used for all ordinary and necessary uses to which city streets are usually subjected, and to such further local uses and means of conveyance as the law-making power may have authorized for the streets and thoroughfares of the entire city, and that incidental injuries arising from a careful exercise of those rights are *damnum absque injuria,* but as to extraordinary or unusual uses or unreasonable changes in the street, no such immunity exists."

*Judgment affirmed.*

Mr. JUSTICE GABBERT and Mr. JUSTICE WHITE concur.