No. 21348.

Jack M. Radinsky, et al. *v.* The City and County of Denver, et al.

(410 P.2d 644)

Decided January 24, 1966.    Rehearing denied February 21, 1966.

CREAMER & CREAMER, for plaintiffs in error.

MAX P. ZALL, EARL T. THRASHER, ROBERT M. KELLY, for defendant in error The City and County of Denver.

DUKE W. DUNBAR, Attorney General, JOHN P. HOLLO-WAY, Chief Highway Counsel, Assistant, JOSEPH M. MON-TANO, Assistant, for defendants in error The Department of Highways, et al.

*En Banc.*

MR. CHIEF JUSTICE SUTTON delivered the opinion of the Court.

THIS is an inverse condemnation case.

Plaintiff in error, hereinafter referred to as the "Radinskys" own and operate a large warehouse, showrooms and storerooms at 2000 West Colfax Avenue in the City and County of Denver where they sell hotel and institutional furnishings and equipment and provide design services to the public. They employ a substantial number of people and have a clientele that comes primarily from the downtown Denver area or from its motel areas. Their business is located just east of the South Platte River on the south side of what is referred to as "Old West Colfax Avenue," at its intersection with Zuni Street, and lies west of a complex interchange located on the Valley Highway; the latter being a freeway that

generally bisects Denver from North to South in the area in question.

The Radinskys allege that for many years past, the principal and only practical access to their place of business from the east and downtown areas, has been over West Colfax Avenue and through Larimer Street and the Larimer Street Viaduct Extension; further, that the principal and only practical access from the west has been via Federal Boulevard and West Colfax Avenue; and, that these highways had, prior to the construction of the Freeway Interchange in question, existed and were dedicated to and used by the public since the year 1874 or even prior thereto. They allege damages in the amount of $75,000 and also seek exemplary damages for an alleged wilful and wanton disregard of their rights.

Radinskys' claim that the Freeway Interchange has affected and substantially destroyed both their ingress and egress. They assert that both customers and employees find it is now almost impossible to locate them, and that it is difficult to move their merchandise in and out of their place of business. It is contended that distances of driving in order to reach the plaintiffs' premises have been increased via one route from ¾ of a mile to 1¼ miles, and by other routes from one block to 1¾ miles and by still another from 200 feet to 1¼ miles.

Though dedication and user of the former access routes to the subject property is admitted, defendants in error deny any damage. The City's Answer also cross-claims against its co-defendant, the Department of Highways for indemnification in the event the City suffers an adverse judgment. Answer to the Cross-claim asserts a contract with Denver that could give relief to the latter claim, however, we need not consider that phase of the case since we concur with the trial court that no liability exists.

A trial was had to the court *in limine* on the question

of liability only, and it rendered judgment adverse to the Radinskys, finding and holding in pertinent part:

"* * * Access to plaintiffs' property from the south along Zuni Street or from the north has not been directly affected by the construction of which complaint is made."

It is also correctly held that plaintiffs' land does not abutt in direct fashion on the closed portions of West Colfax Avenue, nor upon the Larimer Street Extension from the viaduct. Further, it held that

"The removing of the ramp from the viaduct to the street level took away a means of reaching the viaduct level above the street, but it was across the street from plaintiffs' lot line. * * *"

The court then stated:

"The facts here show that plaintiffs have not been denied all access to their property. Access can be gained from north, south, east and west. The construction has made it less convenient when approaching or leaving the property from certain directions, and some circuity of route is required, but access and egress can be gained."

The court also found that whatever injury the Radinskys suffered was not different in kind from that suffered by the general public.

There is extensive testimony which is embodied in a reporter's transcript. Many exhibits were also presented, including full aerial photographs of the area, before and after change, and including the original plats, as well as maps of the entire region, and of the Valley Highway system.

Though several grounds of error are asserted, they all revolve around the constitutional issue as to whether the Radinskys' private property has been taken for public use without compensation in violation of Article II, Section 15 of the Colorado Constitution. We shall consider the matter on that basis.

Generally, it can be stated that the owner of

premises abutting on a highway has certain rights in and to the use of the public way distinct from the public's easement of passage. 25 Am. Jur. *Highways*, § 152; 39 C.J.S., *Highways*, § 141. And, damages occasioned such an owner in front of his land is not one suffered by the public and generally is compensable. *Denver v. Bayer*, 7 Colo. 113, 2 Pac. 6 (1883). That rule, however, applies to an abutting owner; but here, the Radinskys do not come under it. For a good discussion as to what an abutment is, see *Kemp v. Seattle*, 149 Wash. 197, 270 Pac. 431 (1928). The Radinskys' right to recover, therefore, has to rest upon an extension of the rule which permits recovery only when an owner can allege and prove special damage to his property which *differs in kind*, and not merely in degree, from that sustained by the public generally. See *Gayton v. Department of Highways*, 149 Colo. 72, 77, 79, 367 P.2d 899 (1962); 49 A.L.R. 320; 11 McQuillin, *Municipal Corporations*, § 30.192 [3rd ed. (revised) 1964]. *McQuillin, supra*, at page 137, states that in the type of case here "* * * the test is not whether the property abuts, but whether there is special injury."

In the case at bar there has been a rather drastic change in the principal traffic pattern serving the Radinskys' business location. The trial court found, however, that the north-south access was not "directly affected" and that the change only resulted in less convenient approaches from other directions. The record reflects that such was the evidence and we hold that the trial court was therefore correct in applying the pertinent law to it. As to the Radinskys, they suffered no greater loss *in kind* than the general public, although they may have possibly suffered a greater degree of injury due to the particular type of business they are engaged in. Theirs was the classical case of *damnum absque injuria*. What *McQuillin, supra*, in § 30.194 said in speaking of land in a different block from a vacated street is pertinent even though the cut-off here is quite

close to the Radinskys' land; the issue being whether special damages accrue thereby, it was said there as follows:

"* * * And this is so (as to the non-availability of special damages) notwithstanding the new route is less convenient or the diversion of travel depreciates the value of his property. The inconvenience to the lot owner in having to adopt a less direct route to reach certain points, it has frequently been said, is an injury of the same kind as that suffered by the general public." (Part in parenthesis added.)

In the instant case inconvenience cannot be equated with either a special denial to the Radinskys not suffered by the public generally or to a taking of their property.

There being evidence to sustain the findings and judgment of the trial court, the judgment is affirmed.