No. 23596.

SUSAN D. TROIANO, INDIVIDUALLY, AND D/B/A COLONIAL MANOR MOTEL *v.* THE COLORADO DEPARTMENT OF HIGHWAYS; THE COLORADO STATE HIGHWAY COMMISSION, A BODY CORPORATE; CHARLES SHUMATE, COLORADO STATE HIGHWAY ENGINEER; AND CITY AND COUNTY OF DENVER, STATE OF COLORADO, A MUNICIPAL CORPORATION.

(463 P.2d 448)

Decided December 22, 1969.    Rehearing denied January 27, 1970.

FEDER, MORRIS & KORTZ, HAROLD A. FEDER, BRADLEY, CAMPBELL, CARNEY & JOHNSON, for plaintiff in error.

MAX P. ZALL, EARL T. THRASHER, ROBERT M. KELLY, for defendant in error City and County of Denver.

DUKE W. DUNBAR, Attorney General, JOSEPH M. MONTANO, Assistant and Chief Highway Counsel, GEORGE D. DIKEOU, Assistant, for defendants in error The Colorado

Department of Highways; The Colorado State Highway Commission; Charles Shumate, Colorado State Highway Engineer.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

. THE plaintiff in error is the owner of the Colonial Manor Motel in Denver, Colorado. She was plaintiff in the trial court in an inverse condemnation proceeding commenced in August, 1966. Defendants were Colorado Department of Highways; Colorado State Highway Commission, a body corporate; Charles Shumate, Colorado State Engineer, and the City and County of Denver. The parties will be referred to by their positions in the trial court or by name.

Mrs. Troiano sought damages in the sum of $110,000, plus interest, arising from the diminution in market value of her motel because of the construction of a viaduct over the street abutting her property. (The new structure is an elevated portion of Interstate 70.)

■ The action to which error has been assigned was an *in limine* proceeding to determine whether the damage to Mrs. Troiano's property was compensable as a matter of law. C.R.S. 1963, 50-1-1, provides that all questions and issues except the amount of compensation shall first be determined by the court.

: ■ The trial court held that the damages claimed by plaintiff were noncompensable. The court ruled the highway construction was a valid exercise of the police power and that the claimed damage was not different in kind from that suffered by the general public. In our view the judgment of the trial court should be affirmed.

. Mrs. Troiano purchased the Colonial Manor Motel in April of 1959. It is located on the north side of East 46th Avenue between Elizabeth St. and Thompson Court in Denver. Some additions were made by her in 1960. There

were no other motels at the time located within one mile either east or west on 46th Avenue.

Guests of the motel consisted of commercial travelers, stockmen and transients. In March, 1963, construction was begun on a steel and concrete viaduct which was built directly over East 46th Avenue to support a portion of the interstate highway 70 (I-70) which is part of the National Defense Highway System. The structure is supported by concrete columns three feet in diameter which are imbedded into the roadway of East 46th Avenue. The columns in front of Mrs. Troiano's property are placed 83 to 85 feet apart. They are located along the outer edges and along the center of the structure. The structure is 12 feet inside the right of way line of East 46th Avenue. The clearance from the road level of what is now called lower East 46th Avenue to the bottom portion of the elevated structure exceeds 18 feet. The lower roadway still carries four lanes of traffic, two lanes east and two lanes west. The upper level — I-70 — carries three lanes in each direction.

The crux of plaintiff's argument is that under Art. II, Section 15 of the constitution of this state she is guaranteed payment for the diminished market value of her property upon a showing that her property abutted the roadway in question and a substantial access impairment resulted; and that the construction of the 46th Avenue viaduct caused her special and peculiar damages, different in kind from that suffered by the general public; and that the trial court erred in finding the damage to her property arose from a noncompensable exercise of police power. She cites Art. II, Section 15 of the constitution of Colorado, which provides in pertinent part: "Private property shall not be taken or damaged for public or private use, without just compensation. * * * "

It is undisputed that there has been no taking of Mrs. Troiano's property. She claims damage to her property by virtue of her status as an abutting landowner on East 46th Avenue and I-70. She relies on the rule long estab-

lished in Colorado and stated succinctly in *City of Pueblo v. Strait,* 20 Colo. 13, 36 P. 789:

"* * * [W]hen damages are occasioned an abutting owner by an improvement in the street in front of his property, whereby ingress and egress to the premises is injuriously affected, this is a kind of injury not common to the general public."

This rule has been considered in a number of controversies which have found their way to this court and by a large body of case law interpreting and defining the rule. *Roth v. Wilkie,* 143 Colo. 519, 354 P.2d 510; *Minnequa Lumber Co. v. City and County of Denver,* 67 Colo. 472, 186 P. 539; *Denver Union Terminal Ry. v. Glodt,* 67 Colo. 115, 186 P. 904; *Russo v. City of Pueblo,* 63 Colo. 519, 168 P. 649; *City of Colorado Springs v. Stark,* 57 Colo. 384, 140 P. 794; *Denver & S.F. Ry. v. Hannegan,* 43 Colo. 122, 95 P. 343; *City of Pueblo v. Strait, supra; Town of Longmont v. Parker,* 14 Colo. 386, 23 P. 443; *Denver Circle R. Co. v. Nestor,* 10 Colo. 403, 15 P. 714; *City of Denver v. Bayer,* 7 Colo. 113, 2 P. 6. See also 40 Denver L.C.J. 26.

Additionally, Mrs. Troiano claims damage to her property of a special nature, different in kind not just degree, from that suffered by the general public — damage resulting in the diminished market value of her property caused by: I. The disturbance, interfence with and impairment of access to her property from, together with loss of identity and affinity of her property with, the abutting 46th Avenue roadway; II. Change in grade of the street by construction of the overhead viaduct; III. A combination of factors such as (a) circuity of route to her property from I-70, (b) diversion of traffic away from the motel; (c) extraordinary, unreasonable or unanticipated use of the existing roadway; (d) view loss or impairment; (e) loss of light, air and ventilation; (f) loss of affinity or eye appeal.

Although the claims are inextricably intertwined, in

attempting to clarify a discussion of the issues they will be divided as far as possible into separate categories.

## I.
## IMPAIRMENT OF ACCESS

Mrs. Troiano first argues that she is constitutionally guaranteed payment for diminished market value of her real property upon showing that (1) her property abutted the roadway in question and (2) a substantial access impairment resulted. The difficulty in considering this argument stems from the fact that there are two roadways to be considered — East 46th Avenue and I-70. They cannot be viewed in the same way so it is necessary to discuss them and their legal effect on the property separately. The motel from the date of its construction abuts East 46th Avenue. In the case at bar Mrs. Troiano failed to establish a loss of access to her property from East 46th Avenue. Factors listed were the existence of the viaduct columns; limitation of sight distance; and overhang effect of the viaduct; reduction in the number of lanes of East 46th Avenue from six to four; addition of six lanes at the viaduct level; no direct access on East 46th Avenue for southbound Colorado Boulevard traffic (15 blocks to the east); extensive circuity of travel to reach the property from the viaduct; termination of East 46th Avenue at Garfield on the east and Washington on the west; traffic control islands; reduced curb-to-curb dimension from 60 feet to 54 feet.

Most of these factors do not pertain to plaintiff's access to East 46th Avenue from the motel property; those that do were found by the trial court not to create a substantial impairment of access. The record shows, and the trial judge found, that travelers now have full and complete access to the major street systems of the City and County of Denver, much in the same fashion as was had prior to the construction of the new elevated I-70. The trial court found, with substantial support in the record, that access from 46th Avenue to the motel has not been changed, altered, or impaired from its condition

before the viaduct was constructed. The supporting columns for the viaduct do not interfere with those wishing to enter the motel property from Thompson Court or from 46th Avenue.

██ Right of access is subject to reasonable control and limitation. So long as the landowner retains a reasonable means of access to and from his property partial loss of access is not compensable. *Radinsky v. City and County of Denver,* 159 Colo. 134, 410 P.2d 644; *Gayton v. Colorado,* 149 Colo. 72, 367 P.2d 899. Thus, in order for Mrs. Troiano to be compensated for loss of access, as she claims is her right, it was incumbent upon her to establish to the satisfaction of the trial court that she no longer retains a reasonable means of access to and from her property and the general system of public streets. The property owner has the burden of proof with regard to establishing the existence of damages and the amount of compensation therefor. *Board of Commissioners of Jefferson County v. Noble,* 117 Colo. 77, 184 P.2d 142.

II.
## CHANGE IN GRADE OF STREET AND RIGHT OF ACCESS

The evidence on this point showed that the grade on 46th Avenue was reduced on some parts of it but a few inches. The court correctly found this to be an insignificant change in grade, and it was undisputed that this change had no effect whatever on access to the property from East 46th Avenue. However plaintiff argues that the viaduct constitutes a change of grade — in other words that I-70 constitutes a change of grade even though East 46th Avenue substantially remains at its same grade. In support of this argument are cases which arose under specific state statutory provisions requiring payment to abutting landowners of damages resulting from changes of grade of streets or highways. This group of cases holds that the erection of a viaduct across, in, or along a street or highway is a change of grade within the meaning of such statute. *See* 156 A.L.R. 421. For a contrary view

see *People ex rel. New York v. Sandrock Realty Co.,* 149 App. Div. 651, 134 N.Y.S. 427, *aff'd without opinion* 207 N.Y. 771, 101 N.E. 116, *rehearing denied* 208 N.Y. 620, 102 N.E. 1109.

■ Colorado does not have a special statute specifically providing for payment of damages arising out of grade changes. Authorization for such payment must be found under constitutional provisions and the case law. In states which have decided this issue not provided for by specific legislation, the authorities hold that where access to an abutting road remains essentially unimpaired, the building of a viaduct over the road does not constitute a compensable change of grade. *Hill-Behan Lumber Co. v. State Highway Commission,* 148 S.W.2d 499 (Mo.); *Kansas City v. Berkshire Lumber Co.,* 393 S.W.2d 470 (Mo.); *Sauer v. People of the State of New York,* 206 U.S. 536, 27 S. Ct. 686, 51 L.Ed. 1176.

■ The trial court, correctly in our view, rejected the plaintiff's argument that the building of the viaduct and roadway itself constituted a change in grade of 46th Avenue, pointing out that while it created a new means of travel above 46th Avenue, physical access to the motel from 46th Avenue remained unchanged and that Mrs. Troiano never had direct access to I-70 at any time. In *Kansas City v. Berkshire Lumber Co., supra,* decided by the Missouri Supreme Court, we find persuasive authority because we have reason to believe the constitutional provision upon which Mrs. Troiano relies for recovery in this case was probably borrowed from a similar provision in the Missouri constitution adopted one year earlier than the Colorado constitution. *McClain v. The People,* 9 Colo. 190, 11 P. 85.

The *Berkshire* case presented many of the same problems as the case at bar. Berkshire owned property which fronted on Truman Road in Kansas City, Missouri. Until 1943, he conducted a cash and carry lumber business on his property. In 1943, the tract was leased to Jones Lumber Company, which conducted a similar cash and

carry lumber business from that time on. Pursuant to a road improvement project, a strip of land was acquired from Berkshire which varied in depth from 10½ to 19 feet. This strip of land ran parallel to Truman Road, adjacent to the Berkshire property. The city then constructed an elevated viaduct on the existing right of way of old Truman Road. The viaduct was from 12 to 32 feet above the Berkshire tract, with ramps permitting travel beneath the viaduct on old Truman Road. The viaduct structure rested on T-shaped concrete pillars placed at varying distances along the center of the old roadway in front of the Berkshire property. In addition, traffic control islands were constructed between several of these piers in front of the property.

When Berkshire complained that the viaduct construction caused a material decrease of direct access to his property, the court replied:

"* * * Appellant retains its previously existing right of access to previously established Truman Road and in turn to the city's streets and highway system. The legal status of such right has in no way been altered by the erection of the viaduct. Admittedly appellant does not have direct access from its property to the viaduct roadway. However, the viaduct roadway does not actually abut appellant's property and appellant never did have any right of direct access to such roadway. The fact that such access was not accorded does not deprive appellant of any right of access."

Further authority for denying that plaintiff in the case at bar has acquired any rights of access to I-70 is C.R.S. 1963, 120-6-2(2), which provides:

"No private right of access shall accrue to property abutting any freeway established on a new location, except at such points as may be authorized; provided, that nothing contained in this section shall authorize or permit the acquisition of any existing property rights except upon payment of just compensation as provided by law."

Access to the motel from I-70, although not direct, is

not much different from that provided for motels, restaurants and service stations all along the limited access interstate system throughout the country. Ramps leading off from the viaduct for traffic going east or west are so placed that one wishing to reach the motel from the viaduct may do so by passing the motel, taking an off-ramp from the elevated roadway a few blocks beyond it, and then returning below the viaduct on 46th Avenue to the motel.

In our view the elevated portion of I-70 constitutes a new highway on a new location to which Mrs. Troiano has no existing or after acquired property rights. Plaintiff's property abuts East 46th Avenue, and there has been no significant change in the grade of East 46th Avenue causing plaintiff impairment of access to her property.

## III.
## COMBINED DETRIMENT FACTORS CLAIMED TO CAUSE UNIQUE AND SPECIAL DAMAGES

■■ There is well-known general law that in order to be compensable the damage to the property must affect some right or interest which the landowner enjoys and which is not shared or enjoyed by the public generally. The damage must be different in kind, not merely in degree, from that suffered by the public in general. *Radinsky v. City and County of Denver, supra; Gayton v. Colorado, supra; Gilbert v. Greeley, S. L. & P. R'y Co.,* 13 Colo. 501, 22 P. 814

Attempting to meet this test for compensation, plaintiff argues that because the property involved is a motel it is dependent upon accessability to the general public and eye appeal and therefore the damage she has suffered because of the building of the viaduct is special in nature, different than that suffered by the general public. An expert real estate appraiser called as a witness on behalf of plaintiff advanced several reasons for his opinion that the damage to the motel was unique. He

stated that removal or lessening of traffic in front of residential properties adjacent to the motel has a diametrically opposite effect upon the motel property than on commercial properties in the vicinity of the motel because the latter depend to a great extent upon local traffic while the motel depends on vehicular travelers. He concluded that access changes affect the motel property while the same changes do not affect adjacent commercial and residential properties. Other factors were that the motel property is subjected to additional advertising costs while residential and commercial properties abutting 46th Avenue are not so affected.

■ Part and parcel of the lessening of traffic past the motel is that the travelers use I-70 and are required to take a more circuitous route to reach her property from I-70. One proceeding either east or west on I-70 must pass the motel and the eye-level sign marking the motel, take a down ramp, and then double back several blocks on East 46th Avenue to reach the property. Colorado cases have held that mere inconvenience and mere circuity of route necessary for access or egress occasioned by a public improvement are not compensable items of damage. *Radinsky v. City and County of Denver, supra,* and *Gayton v. Dept. of Highways, supra.*

Courts from other jurisdictions have, on similar or allied questions also ruled substantially in the same way — that compensation is not permitted for damage caused by circuity of route. *State v. Danfelser,* 72 N.M. 361, 384 P.2d 241, *cert. denied* 375 U.S. 969, 84 S.Ct. 487, 11 L.Ed. 2d 416; *Stefan Auto Body v. State Highway Commission,* 21 Wis. 2d 363, 124 N.W.2d 319, 43 A.L.R.2d 1072. This has been the rule where, as here, the properties involved were used for business purposes such as motels, restaurants, and gas stations, and where the inability of the traveling public to get to the property conveniently had, in effect, diminished the value of the business property. In *Stefan Auto Body v. State Highway Commission, supra,* the plaintiff's property used as a filling station and auto-

mobile service garage lay on a frontage road midway between interchanges five miles apart which were the nearest access to an interestate highway. However, the court held that he had reasonable access to the highway. The court defined the nature of police power as it relates to abutting owners quoting from *City of Neenah v. Krueger,* 206 Wis. 473, 240 N.W. 402.

"* * * The law recognizes that the owner of property, even though it be situated upon a public street, has a right of ingress and egress to and from his premises. However, this right is in common with most other rights subject to reasonable regulations in the public interest and for the promotion of public convenience and safety. * * * "

As part of her contention for recompense, plaintiff has pointed to *diversion of traffic away from the property.* This factor is hardly separable from circuity of route, since the diversion of traffic will inevitably have as its result "circuity of route." A leading case dealing with the subject of diversion of traffic is *Board of County Commrs. of Santa Fe County v. Slaughter,* 49 N.M. 141, 158 P.2d 859. In that case a landowner had constructed a store, restaurant, filling station and numerous tourist cabins immediately abutting and adjacent to U.S. Highway No. 85 in New Mexico. In the *Slaughter* case, as in the case at bar, the highway department constructed a new highway. This new highway, located approximately three-eights of a mile to the rear of the Slaughter improvements, was separated from them by a two-hundred foot high mesa, which made impossible direct access from the improvements to the new highway. Naturally, as a result of the construction of the new highway, traffic was taken from in front of the improvements and passed to the rear of the landowner's property. In this respect the *Slaughter* case is very similar to the case before the court, since traffic was taken from East 46th Avenue and placed on the new highway, the elevated portion of I-70. The property owner in the *Slaughter* case claimed damages because the vehicular traffic was routed away from

his improvements and business and onto the new highway. The old highway remained in existence and used much as is East 46th Avenue in this case.

The question before the New Mexico court was: Can damage to the property, caused by diversion of traffic, be considered in determining the amount of just compensation? The court held that although market value of the property may be reduced, it is universally recognized that there are elements of damage for which no compensation will be given. Specifically, the court held that no person has a vested right in the maintenance of the public highway in any particular place:

"* * * Obviously, the landowner's claim must rest or fall upon a decision whether she has a vested right in the flow of public travel, which once came by her door, but which for now, for the convenience of the general public, a shorter and more convenient route has been opened and is being employed. We hold she has no such right."

Other cases which have reached the same result are *State v. Lavasek,* 73 N.M. 33, 385 P.2d 361; *Commonwealth v. Hession,* 430 Pa. 273, 242 A.2d 432, *cert. denied* 393 U.S. 1049; *State Highway Commission v. Meier,* 388 S.W.2d 855 (Mo.).

In the case at bar the effect of the diversion would be no different than if I-70 had been located several miles to the north or south of the subject property, and in such case, as has been pointed out, the diversion of traffic is generally held to be *damnum absque injuria.*

Plaintiff has relied heavily on *People v. Ricciardi,* 23 Cal. 2d 390, 144 P.2d 799, a 1944 case holding that a contrary result should be reached when there is not merely a rerouting of or diversion of traffic from the highway but instead a substantial change in the highway itself in relation to defendant's property. The highway improvement in the *Ricciardi* case involved a proposed underpass on a portion of the road which abutted Ricciardi's property. His property had improvements which included a slaughter house and a retail meat market. A service road

was to be provided to give access to the property since Ricciardi was to have no direct access to the highway after its completion. In order to enter the highway he would have had to traverse the service road to the first cross street some 525 feet from the subject property. The court allowed damages, not for diversion of traffic from the highway, but "based on diversion of the highway from direct access to defendant's property." The *Ricciardi* opinion which was a 4-3 decision represents a minority view, and has been rejected by a majority of the courts which have considered it. See *Kansas City v. Berkshire, supra; State v. Peterson,* 134 Mont. 52, 328 P.2d 617; *Carazalla v. State,* 269 Wis. 593, 71 N.W.2d 276; *State v. Lavasek, supra;* and *Stefan Auto Body v. State Highway Commission, supra.* See also 3 Stan. L. Rev. 298.

In addition, a distinguishing factor between *Ricciardi* and the case at bar is that it is this court's view that I-70 is in essence a new highway which diverted traffic from East 46th Avenue, leaving the latter street in the same relationship to the plaintiff's property as it was before the construction.

Additional argument presented is that the erection of the new highway was an extraordinary, unreasonable or unanticipated use of the existing right of way, which deprived plaintiff of reasonable access to her property. She puts primary reliance on *City of Pueblo v. Strait, supra.* With regard to extraordinary use of streets, that case states:

"We think the building of a viaduct in a public street is such an extraordinary use of the street as could not have been reasonably anticipated at the time of the dedication. And under constitutions like ours, both principle and authority unite in support of the rule allowing the owner of abutting property to recover damages when the means of ingress and egress to his property is obstructed or injured thereby."

It is to be noted from the foregoing statement of this court that the rule requires not only the con-

struction of an improvement which ordinarily is not anticipated, but also a factual showing of substantial impairment or obstruction of means of ingress or egress. The facts in *City of Pueblo v. Strait, supra,* show such impairment. There has been no showing whatsover in the case at bar that the access to and from the motel was impaired or obstructed by the erection of this viaduct. As to the use not being anticipated, the testimony of the assistant chief engineer for the Department of Highways was that the nature of the improvement to be constructed over East 46th Avenue had been decided upon in 1958 and that a public hearing had been held pointing out that the improvement was to be a viaduct. However, Mrs. Troiano and her witnesses testified that they *knew* of the viaduct as one of several plans being considered at the time for improving highway facilities; that at the time of the public hearing in 1958 she was not yet a resident of Denver and had no knowledge of the meeting, and that she thought nothing would be done concerning the proposed highway until 1967 at the earliest. Although the trial court made no finding regarding Mrs. Troiano's knowledge or lack of knowledge of the actual plans at the time she purchased the motel, it cannot be said such use was not anticipated.

It is also important to note also that *City of Pueblo v. Strait, supra,* was decided in 1894. Today's necessity for providing for the safe passage of a vastly increased number of fast moving automobiles makes it highly doubtful that the building of a viaduct over a public street would still be viewed as an extraordinary or unusual use. For these reasons *City of Pueblo v. Strait, supra,* has no application to the case at bar.

The other case cited by the plaintiff for the proposition that the construction of the highway on an elevated viaduct is an unreasonable, extraordinary or unanticipated use is *Minnequa v. Denver, supra.* That case too is distinguishable. In *Minnequa* a decisive point was that the claimant for damages demonstrated that his property

500

right of access was substantially destroyed, which has not been shown in the instant case.

One other claimed special and unique damage is the loss of view. There are two types of view with regard to the motel property. One is the view from the highway looking toward the property. Mrs. Troiano has complained that the traveling public on I-70 can no longer see her motel since it is below the viaduct. With the majority view holding that a property owner has no right to have the traveling public pass his property, logically it would be inconsistent to say that a property owner has a right to have the traveling public afforded a clear view of his property.

The other kind of loss of view — loss of view from the property caused by the construction of this viaduct, also is not compensable. For authority supporting this conclusion see *State v. Preston,* 170 Ohio 542, 166 N.E.2d 748; *Earl v. Arkansas State Highway Commission,* 241 Ark. 11, 405 S.W.2d 931; *Blair v. State,* 19 App. Div. 2d 937, 244 N.Y.S. 2d 274. In the same category is the claim for damage because of the *loss of light, air* and *ventilation.* Most courts, in similar cases, hold that any loss attributable to these items constitute general damages and not specific damages. See *Campbell v. Arkansas State Highway Commission,* 183 Ark. 780, 38 S.W.2d 753; *Probasco v. City of Reno,* 459 P.2d 772 (Nev.); *Baldwin-Hall Co., Inc. v. State,* 22 App. Div.2d 747, 253 N.Y.S.2d 651; *State v. Preston, supra; Sauer v. People, supra.* "* * * [W]here the damage suffered by an improvement in the street or highway made by the state or municipality is common to the public generally, no recovery can be had from the state or municipality, even though the damages suffered may be greater in degree than that to the general public. * * *" 26 Am. Jur. 2d 885.

Loss of affinity or eye appeal with the abutting street is similarly noncompensable. The fact that Mrs. Troiano is in the motel business does not give her damages different in kind, but only degree. It should

first be pointed out that the nature of the business involved does not change the right of an individual to compensation. See *Radinsky v. City and County of Denver, supra.*

Plaintiff strenuously argues that the very presence of the huge structure adjacent to her property has destroyed the eye appeal of the property and its affinity with the roadway, and thus diminished the value of her property. However, in view of the fact that we view the other injuries complained of by plaintiff to be *damnum absque injuria* on the basis of persuasive legal precedents we can find no rationale in the law for holding the mere presence of the structure to be compensable. The unsightliness of the structure is an injury suffered by the public in general.

Limited access highways such as I-70 are said to promote the public safety and general welfare. However, plaintiff argues that the sanctity, security and property rights of a private citizen will be trampled upon if compensation is not given for the damage caused her by the construction of I-70. All authorities agree that the distinction between a noncompensable exercise of the police power and a taking which must be compensated under the power of eminent domain is blurred and difficult to apply. Engineers and planners of the nation's highways continue to assert that such highways are necessary to promote the safety and the welfare of the public, and their findings give rise to exercise of the police power. Any consequential damages such as Mrs. Troiano's motel business has suffered will, under the majority view, be noncompensable as having occurred incident to a legitimate exercise of the police power. It is also not disputed that East 46th Avenue was overburdened with traffic before the construction of the viaduct and that a means of handling increased east-west traffic was necessary to remove dangerous congestion from the existing streets. Vasquez Blvd. is still the main thoroughfare for traffic from Interstate 80 S and U.S. 6 and U.S. 85 from

the north to East 46th Avenue. That route has not been impaired to plaintiff's motel, but the traffic congestion has been eased on East 46th Avenue by permitting access from Vasquez Blvd. to I-70.

It is our duty to declare the law as it is, and if there is to be compensation paid in situations of this kind it may be provided for by the legislature.

The judgment is affirmed.

Mr. Justice Pringle, who originally concurred in the result, after petition for rehearing dissents.

Mr. Justice Groves specially concurring.

Mr. Justice Groves specially concurring:

I do not regard the matter of whether or not Mrs. Troiano anticipated the use represented by I-70 as a factor to be considered here. I realize that there is authority to support consideration of this factor, but to me it should have cognizance, if at all, only with respect to *amount* of damages and not relative to the *right* to damages. I concur with all other portions of the opinion and in its result.

## ON PETITION FOR REHEARING

On Petition for Rehearing, Mr. Justice Pringle dissents:

On Petition for Rehearing, I now dissent.

Since I stand alone on the Court in this dissent, I shall state my position most succinctly. In my view, the placing of a veritable jungle of steel and concrete in the street which constituted the access to the motel property just as surely constituted a "taking" within the meaning of the Colorado and United States Constitutions as if the state had physically detached two or three feet from the front of the Troiano property for highway purposes.

I think that until the majority opinion was announced that was also the position of our decisions. See *Minnequa*

*Lumber Co. v. City and County of Denver,* 67 Colo. 472, 186 P. 539; *Denver Union Terminal Ry. v. Glodt,* 67 Colo. 115, 186 P. 904; *City of Pueblo v. Strait,* 20 Colo. 13, 36 P. 789.

Long before there were federal and state constitutional guarantees against taking private property for public use without just compensation, that wise legal philosopher Grotius spoke as follows:

"A king may two ways deprive his subjects of their right, either by way of punishment or by virtue of the eminent power. But if he does it the last way, it must be for some public advantage, and then the subject out to receive, if possible, a just satisfaction for the loss he suffers, out of the common stock." *De Jure Belli et Pacis (1625). Bk. II, ch. XIV, § VII.*

In this day, when the trend is to apply humane and enlightened expression to the law so as to provide, for instance, that loss to an individual without his fault by reason of the use of a product should be spread among those who receive the benefits of the product, I would think it only proper to hold that the public as the recipient of the benefits of the public improvement ought to bear the irretrievable loss suffered by the individual whose use of his property is not noxious nor injurious to the public and whose only sin is that his property is located adjacent to the improvement.

In closing, I would call to my colleagues' attention the cogent words of Mr. Justice Holmes in *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 67 L.Ed. 322, 43 S.Ct. 158, when he remarked that those who promote change must realize it has its limits or private property disappears.