STATE DEPARTMENT OF HIGHWAYS, DIVISION OF HIGHWAYS, State of Colorado, Petitioner-Appellant,

v.

Edward DAVIS and Gertrude R. Davis, Respondents-Appellees,

Heritage Savings and Loan Association; Marie R. DeWitt and Lloyd C. DeWitt, Trustees, D. Kirk Tracy; and Geneva C. Mosher, as Treasurer and Public Trustee of Prowers County, Respondents.

No. 79SC147.

Supreme Court of Colorado, En Banc.

April 6, 1981.

As Modified on Denial of Rehearing April 27, 1981.

J. D. MacFarlane, Atty. Gen., Richard J. Hennessey, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., Vicki J. Fowler, Asst. Atty. Gen., Denver, for petitioner-appellant.

Andersen & Gehlhausen, P. C., John Gehlhausen, Lamar, for respondents-appellees.

No appearance for respondents.

ERICKSON, Justice.

We granted certiorari to review the court of appeals' decision in *State Department of Highways v. Davis et al.*, 42 Colo.App. 250, 596 P.2d 400 (1979). We reverse and remand with directions for a new trial on the issue of damages to the remainder.

The State Department of Highways (petitioner) filed a petition to condemn a narrow strip of land owned by respondents to construct a service road for a freeway. *See* article 1 of title 38, C.R.S.1973. Prior to a jury trial to determine the value of the property taken and the damages to the remainder, the court, pursuant to section 38–1–101, C.R.S.1973, held an *in limine* hearing on respondents' motion to determine damages to the remainder caused by the condemnation. The parties stipulated that prior to the condemnation, respondents had two direct points of access onto State Highway 50. Both before and after the taking, respondents operated a store on their property which rented various types of equipment. The land was condemned to construct a frontage road to service the limited access highway. Respondents retained two points of direct access to the frontage road. The frontage road provided respondents with direct access onto State Highway 50 at a junction which was approximately 300 feet east of their property.

At the conclusion of the *in limine* hearing, the court declared that respondents' access to the remainder had been substantially impaired, and held that respondents could present evidence of damages to the remainder caused by the impairment of access. The court also permitted respondents' appraiser to testify as to his opinion on damages to the remainder caused by statutory restrictions on the erection of new advertising devices. *See* part 4 of article 1 of title 43, C.R.S.1973 (Colorado Outdoor Advertising Act).

At trial, respondents' appraiser testified that damages to the remainder which resulted from the taking of respondents' land were $26,389 because:

"Well, it's damage because in the before-condition he had prime highway frontage property which is the property to own. In the after-condition he didn't have prime highway frontage any more. They have put him on a frontage road which is approximately 300 feet east of his first turn-in point. This frontage road is also a dead end road which means that once you come to the end of this road you have to come and turn around and go back out. The possibility of advertising, for people headed west, they will see the property and the sign once they get down in front of the Davis property. Which means that if he wants to visit the business, they're going to have to wait for a cut-in and turn, back-track and do their business, back-track again and come back in. For the people going into Lamar east, they could see the sign and Davis could put a sign, turn-in 300

feet east. But the problem, your natural tendency, is to look to the right. That's the safe place to look. You will have a truck deceleration lane, you're going to have all kinds of traffic. All that would tend to block your view to the property. Assuming that you did see it, you would have to come down here and find the turn-in-point. Again, there would be no signs here. So you would be taking a guess about it. In the before-condition if you were leaving the Davis property, there was a shoulder along Highway 50 that you could pull on it and it would be relatively safe to speed up on the on-coming traffic and slip into the main street of traffic. Of course, any time you've got to cross a traffic to go into the other direction, you always have a danger. That is not necessarily the case here. Of course, you've still got the danger but now when you pull out of this area here, you're actually going to pull out into a deceleration lane. Which means that every truck that's going west in Lamar is going down this deceleration lane. So the hazard is going to increase a little bit because of this deceleration lane which does go down this direction."

One of the respondents, as landowner, expressed his opinion on damages to the remainder when asked the following questions:

"MR. GEHLHAUSEN: [Mr. Davis], in your opinion has the remainder of your land, . . . been damaged by the taking of the State?"

\*    \*    \*    \*    \*    \*

"MR. DAVIS: Well, by taking the area that they have here, putting us back on a frontage road off the main highway, I think pretty near anybody with good sense at all can see what our damage has been.

"MR. GEHLHAUSEN: Would you explain to the jury just how that's been hurt back there?"

\*    \*    \*    \*    \*    \*

"MR. DAVIS: As I have said, it will damage it in our hedge against inflation because any highway-related business

that we might sell this property to now will not have a good access off the highway and consequently that will hurt us in our over-all sale."

Petitioner's appraiser testified that in his opinion no damages to the remainder occurred as a result of the taking.

The parties stipulated to the value of improvements taken, and the primary issues for the jury were the value of the property taken and the damages to the remainder caused by impairment of access. The jury returned a verdict of $10,181 for the property actually taken, and $21,689 for damages to the remainder. The court entered judgment on the jury's verdict, and amended the award to include the stipulated value of the improvements.

Petitioner appealed from the $21,689 award for damages to the remainder. The court of appeals, in an opinion which relied in large part upon the fact that a portion of respondents' land was actually taken, affirmed the trial court. The opinion concluded that the trial court determined that respondents' right of access had been substantially impaired, and that the jury properly considered impairment of access in its determination of damages to the remainder. The court of appeals also concluded that statutory restrictions on a landowner's right to construct signs along freeways are proper factors for the jury to consider in determining damages to the remainder. These conclusions of law are before us for review. We conclude that the jury should not have been permitted to consider damages to the remainder caused by impairment of access and advertising restrictions, and that a new trial on the issue of damages to the remainder is required.

I.

Denial of Access

The right of access is the right of a landowner who abuts on a street or highway to reasonable ingress and egress. *Radinsky v. Denver*, 159 Colo. 134, 410 P.2d 644 (1966); *Minnequa Co. v. Denver*, 67

Colo. 472, 186 P. 539 (1919); *Pueblo v. Strait*, 20 Colo. 13, 36 P. 789 (1894); *City of Denver v. Bayer*, 7 Colo. 113, 2 P. 6 (1883); *People v. Ayon*, 54 Cal.2d 217, 352 P.2d 519, 5 Cal.Rptr. 151 (1960). Covey, *Frontage Roads: To Compensate or Not to Compensate*, 56 N.W.L.Rev. 587 (1961); Campbell, *The Limited Access Highway—Some Aspects of Compensation*, 8 Utah L.Rev. 12 (1962). A landowner's right of access to and from land abutting a highway may be reasonably regulated for the public safety or welfare under the police power. *Hayutin v. Highway Department*, 175 Colo. 83, 485 P.2d 896 (1971). 2A, *J. Sackman, Nichols on Eminent Domain*, § 6.4443(4) (rev. 3d ed. 1976); 1, *Orgel, Valuation Under The Law of Eminent Domain*, § 1 (2d ed. 1953). *See generally, City of Boulder v. Kahn's Inc.*, 190 Colo. 90, 543 P.2d 711 (1975).

The power of the government to regulate access is limited, however, by Article II, Section 15 of the Colorado Constitution which provides: "Private property shall not be taken or damaged, for public or private use, without just compensation. . . ." The question of when the regulation of land under the police power becomes a "taking" for which compensation is constitutionally required is a matter of degree. *See Collopy v. Wildlife Commission*, —— Colo. ——, 625 P.2d 994 (1981). While property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking. *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922).

The issue, therefore, is whether the respondents can recover damages to the remainder of their property caused by the limitation of access. Resolution of the damages issue requires us to determine whether the recovery of damages for impairment or limitation of access depends on whether part of the abutting landowner's property has been taken.

## II.

### Substantial Impairment of Access

A long line of cases in Colorado have dealt with impairment of an abutting landowner's right of access and the effect of the impairment on the damage issue in an eminent domain proceeding. *See, e. g., Shaklee v. County Comm.*, 176 Colo. 559, 491 P.2d 1366 (1971); *Hayutin v. Highway Department, supra; Thornton v. Colo. Spgs.*, 173 Colo. 357, 478 P.2d 665 (1970); *Majestic Hts. v. Co. Comm.*, 173 Colo. 178, 476 P.2d 745 (1970); *Troiano v. Colorado Department of Highways*, 170 Colo. 484, 463 P.2d 448 (1969), compare, *Minnequa Co. v. Denver, supra; Radinsky v. Denver, supra; Gayton v. Colorado*, 149 Colo. 72, 367 P.2d 899 (1962); *Boxberger v. State Highway Commission*, 126 Colo. 526, 251 P.2d 920 (1952); *Denver Bank v. Commissioners*, 105 Colo. 366, 98 P.2d 283 (1940); *Denver Railway Co. v. Glodt*, 67 Colo. 115, 186 P. 904 (1919); *Pueblo v. Strait, supra; Denver Circle R. Co. v. Nestor*, 10 Colo. 403, 15 P. 714 (1887); *Whitsett v. Union D. & R. Co.*, 10 Colo. 243, 15 P. 339 (1887). The varying factual patterns and the technical legal distinctions encompassed in the cited cases foreclose us from making more than a statement of the general rules that govern the determination of whether an abutting landowner has suffered substantial loss or impairment of access which is compensable.

The general rule is that an abutting landowner is entitled to compensation for limitation or loss of access only if the limitation or loss substantially interferes with his means of ingress and egress to and from his property. *Shaklee v. County Comm., supra; Gayton v. Colorado, supra.* In determining whether there has been substantial interference with a landowner's access, we have declared that inconvenience caused by the required use of a more circuitous route to gain access to property does not constitute substantial impairment of access. *Hayutin v. Highway Department, supra; Thornton v. Colo. Spgs., supra; Toriano v. Colorado Department of Highways, supra; Radinsky v. Denver, supra.* The rationale for denying compensation for limitation or loss of access manifested by circuity of route is that the inconvenience suffered by the landowner is identical in kind to that suffered by the community at large, and the landowner's inconvenience is only great-

er in degree. *See Gayton v. Colorado, supra.* Covey, *Frontage Roads: To Compensate or Not to Compensate, supra.*

■ In our view, whether or not property is actually taken is immaterial to the issue of damages to the remainder of the property for loss or limitation of access. The same criteria must be used in both instances. Compensation is only required when the remainder is damaged by a substantial limitation or loss of access. *State Commissioner of Transportation v. Charles Investment Corporation,* 143 N.J.Super. 541, 363 A.2d 944 (1976); *State v. Easley,* 215 Va. 197, 207 S.E.2d 870 (1974). Any other result would create serious problems of fairness to landowners similarly situated. *See State Commissioners v. Charles Investment Corporation, supra.*

In *State v. Easley, supra,* the Virginia State Highway Commission instituted condemnation proceedings to acquire a small portion of the Easley's land for improvement of a highway. The Virginia Supreme Court held that the trial court erred in permitting the commissioners to consider as damages to the remainder the reduction in access of the land to the highway as a result of the installation of curbing which had openings and provided Easley with reasonable access to the highway. The court stated that an abutting landowner's right of access to a public road is subordinate to the police power of the state to reasonably control the use of streets so as to promote the public health, safety, and welfare. The same principles were held to apply when regulation of access occurred conjointly with a compensable taking of property.

Respondents rely heavily on the opinion in *Boxberger v. State Highway Commission, supra.* In *Boxberger, supra,* Justice Holland declared that a landowner could recover damages to the remainder of his property caused by a substantial impairment of access when part of his property was actually taken. The proper measure of damages, according to *Boxberger,* was the "difference between the value of the land and its use for any and all kinds of purposes before the disturbance or destruction of such rights, and the value of the land minus any access or disturbed or inconvenient access to the highway." *Id.* at 535, 251 P.2d 920. To the extent that *Boxberger* is still good law today, the facts before us in this case are different and must be distinguished. In *Boxberger,* the landowner's access rights were taken in totality by the Highway Department. In view of the substantial impairment of access in the *Boxberger* case, it was proper to consider the limitation or loss of access in determining damages to the remainder. By contrast, the limitation of access in this case did not constitute a total taking or even a substantial impairment of access.

■ Both the court of appeals and the trial court erred in concluding that the respondents' access had been substantially impaired based upon the rationale in *Boxberger v. State Highway Commission, supra.* The trial court's determination that respondents' access had been substantially impaired is a question of law, and thus, subject to review on appeal. *Shaklee v. County Comm., supra, Narciso v. State,* 114 R.I. 53, 328 A.2d 107 (1974). The record does not support a determination that respondents' access was substantially impaired as a matter of law.

The before and after condition of respondents' land is of critical importance. Prior to the condemnation proceeding, respondents had two direct points of access onto State Highway 50. After the condemnation occurred, respondents' access was limited to the extent that it was necessary to travel approximately 300 feet east on the frontage road to gain access to State Highway 50. However, respondents retained two direct points of access to the frontage road. As a matter of law, the respondents' access was not substantially impaired. *See, State Commissioner of Transportation v. Charles Investment Corporation, supra.* (Where owner's access to the road immediately in front of his property is unchanged and unaffected, there is no deprivation of access such as to entitle the owner to compensation.) *See also, Hayutin v. Highway Department, supra; Thornton v. Colo.*

*Spgs., supra; Troiano v. Colo. Dept. of Hwys., supra; Radinsky v. Denver, supra.* (Mere circuity of route occasioned by a public improvement does not constitute substantial impairment of access.)

In the opinion of respondents' appraiser, access was impaired because of respondents' required use of a more circuitous route to gain access onto the highway. Damages to property occasioned by circuity of route are generally not compensable, and should not have been considered by the jury in determining damages to the remainder.

### III.

### Section 43–3–106

■ Respondents assert that section 43–3–106, C.R.S.1973, requires that the state compensate them for the limitation of access rights. Section 43–3–106 provides:

"The state department of highways is authorized to purchase or condemn any land necessary for the construction of any local service road authorized by this part 1 and is also authorized to purchase or condemn any right of access appertaining to any land abutting on a state highway or on a portion of a state highway when such right of access is disturbed or destroyed by the designation of a state highway or such portion of a state highway as a freeway under the provisions of this part 1 in the same manner and form as provided by law for the purchase or condemnation of highway rights-of-way."

The Supreme Court of Kansas interpreted a statute similar to section 43–3–106, in *Ray v. State Highway Commission,* 196 Kan. 13, 410 P.2d 278 (1966), *cert. denied,* 385 U.S. 820, 87 S.Ct. 43, 17 L.Ed.2d 57. In the *Ray* case, the State Highway Commission condemned a portion of Ray's land for highway purposes. A frontage road was built across the condemned land. After construction, Ray's once direct access onto U.S. Highway No. 54 was limited to access by way of the frontage road. Ray argued that the controlled access facilities statute (K.S.A. 68–1901, *et seq.*) was a mandatory provision requiring condemnation and pay-ment of damages when access rights were restricted. Specifically, K.S.A. 68–1903 provided:

"Acquisition of property and property rights. The highway authorities, jointly or severally, may acquire the desired private or public property, including rights of access, light, air or view for controlled access facilities, by gift, devise, purchase or condemnation, in the same manner as now or hereafter authorized by law for acquiring property or property rights in connection with highways, roads and streets within their respective jurisdictions."

The Kansas Supreme Court concluded that the statute did not restrict the state's existing right to control access under the police power. Rather, the act was intended to give the State Highway Commission authority to take a landowner's right of access in its entirety, something which could not be done under the police power.

The reasoning of the Kansas Supreme Court in its construction of the Kansas statute can be analogized to the legislative mandate contained in section 43–3–106. We conclude that section 43–3–106 authorizes compensation where a landowner's right of access is taken, not where access is reasonably regulated. Our interpretation of section 43–3–106 is consistent with our holding that a landowner's right of access to land which abuts on a highway may be reasonably regulated for the public safety or welfare under the police power. *See, e. g., Hayutin v. Highway Department, supra.*

### IV.

*The Colorado Outdoor Advertising Act*

At trial, respondent landowner testified that one of the factors which he considered in determining that the remainder of his property was damaged by the taking was his inability to erect new advertising devices at the point where the frontage road intersects State Highway 50. Respondents' appraiser testified that in his opinion the remainder had been damaged because people traveling west on State Highway 50

would not be able to see the sign on respondents' property until they were in front of the property and then a potential customer would have to proceed to an exit from the highway, turn around and backtrack in order to reach the property.

The petitioner asserts that it was error to allow the jury to hear testimony and assess damages to the remainder based upon advertising restrictions which were enacted as a valid exercise of the police power. See part 4 of article 1 of title 43, C.R.S.1973 (Colorado Outdoor Advertising Act). Respondents argue that damages to the remainder were caused by the taking of property and not by an exercise of the police power under the Colorado Outdoor Advertising Act, which imposed sign restrictions on their property long before condemnation proceedings were commenced. The restrictions on advertising, according to the respondents' theory, affected the property both before and after the taking, and were, therefore, properly considered by the jury in determining damages to the remainder.

■ The distinction between a taking which requires compensation and a restriction imposed under the police power which is *damnum absque injuria, Swisher v. Brown*, 157 Colo. 378, 402 P.2d 621 (1965), should not be confused by the fact that a compensable taking occurs contemporaneously with a noncompensable exercise of the police power. In *State ex rel. Moore v. Bastian*, 97 Idaho 444, 546 P.2d 399 (1976), the state brought an action to condemn a portion of the Bastian's land for the purpose of improving a portion of the state highway system. In addition to the Bastian's claims for compensation for the property actually taken and the damages accruing to the remainder, they also sought damages for the depreciation in the value of the remaining property by reason of expected diversion of traffic from controls which the state proposed to place on the streets in conjunction with the widening of the streets. The Bastians tendered evidence to establish that the traffic control devices discouraged customer patronage at the store located on their property and the remainder. The state objected to the admission of the testimony because the police power was the basis for the erection of the traffic control devices. The Idaho Supreme Court agreed with the state and concluded that the placement of medians and any consequent injury caused thereby were the results of an exercise of the state's police power rather than a taking under its power of eminent domain, and held that the damages caused by the exercise of the police power were noncompensable. The court stated that the fact that an exercise of the police power occurred contemporaneously with a direct taking did not require compensation. *Accord, State v. Monmounth Hills, Inc.*, 110 N.J.Super. 449, 266 A.2d 133 (App.Div.1970); *Jacobson v. State Highway Commission*, 244 A.2d 419 (Me.1968). 2A *J. Sackman, Nichols on Eminent Domain*, § 6.4443(4) (rev. 3d ed. 1976).

■ Respondents do not assert that the Colorado Outdoor Advertising Act is an invalid exercise of the state's police power. Accordingly, the jury should not have been allowed to consider damages to the remainder resulting from advertising restrictions which were enacted as a valid exercise of the police power.

We reverse and remand to the court of appeals with directions to return this case to the district court for a new trial on the issue of damages to the remainder consistent with the directions contained in this opinion.