**STATE DEPARTMENT OF HIGHWAYS, DIVISION OF HIGHWAYS, STATE OF COLORADO, Petitioner,**

**v.**

**INTERSTATE–DENVER WEST, a Colorado joint venture consisting of C. Gary Skartvedt, Thomas W. Anthony, Macy J. Price, Respondents.**

**No. 89SC61.**

Supreme Court of Colorado,
En Banc.

May 21, 1990.

As Modified on Denial of Rehearing
June 11, 1990.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Thomas W. Gibb, Sp. Asst. Atty. Gen., and Harry Morrow, Asst. Atty. Gen., Denver, for petitioner.

Faegre & Benson, Joseph M. Montano and Leslie A. Fields, Denver, for respondents.

Justice ERICKSON delivered the Opinion of the Court.

We granted certiorari to decide whether a landowner's right of access to property is substantially impaired as a matter of law when one of two access points to the public streets is taken by condemnation. The court of appeals held that there was substantial impairment as a matter of law. *State Dep't of Highways v. Interstate–Denver West,* 772 P.2d 649, 651 (Colo.1988). We reverse and remand with directions.

### I

The State Department of Highways, petitioner in this court, condemned a 9.17 acre portion of respondent Interstate–Denver West's 38.32 acre tract in Jefferson Coun-

ty, near the City of Golden, for the construction of the C–470 highway.

When the petitioner took possession of the condemned portion in August 1984, the entire tract was vacant, undeveloped land which had been approved for planned unit development (PUD) in 1979. Access to the property was from the east by means of existing West 4th Avenue. When the nine acres were taken, the respondents were planning another access point at the southwest corner of the tract to Rooney Road. The access to Rooney Road had not been constructed and the west end of the tract was approximately twenty-five feet below Rooney Road. The condemned parcel was the southwest corner of the tract, and included the proposed point of access to Rooney Road. After the taking, the respondents no longer had even theoretical access to Rooney Road, but the existing access by West 4th Avenue remained unimpaired.

During the ensuing eminent domain proceedings, the trial court conducted an extended *in limine* hearing. After receiving testimony from both sides, the trial court found that the respondents retained reasonable access to the property by West 4th Avenue, that a substantial majority of the traffic would use that entry, and that there was no evidence that the West 4th Avenue entry could not accommodate traffic generated by development of the respondents' remaining property. The trial court concluded that the loss of the proposed Rooney Road access did not constitute substantial impairment of access under *State Dep't of Highways v. Davis*, 626 P.2d 661, 664–65

(Colo.1981), and thus could not be considered as a separate element of damages to the remainder of the property. The trial court did rule that the respondents could introduce evidence of damages to the remainder due to a possible zoning change if the change was probable and caused by the condemnation.

Trial was to a commission which found that the value of the property physically taken was $803,234, and that the damage to the remainder was $300,000. The trial court approved the findings of the commission, and the respondents appealed only the award of damages to the remainder. The court of appeals reversed, holding that the complete loss of the southwest access point to Rooney Road constituted substantial impairment of access as a matter of law. *State Dep't of Highways v. Interstate–Denver West*, 772 P.2d at 651. We granted certiorari to decide whether the court of appeals holding was consistent with our opinion in *State Dep't of Highways v. Davis*, 626 P.2d at 664–65.

## II

To distinguish between permitted regulation, where no compensation is required, and a taking which requires compensation,[1] conceptual, theoretical, and practical issues must be addressed which are difficult to resolve. The fact that state action diminishes the value of private property, or that the diminution is quantifiable with certainty, does not by itself command compensation.[2] It is only when governmental regu-

---

**1.** The Colorado Constitution provides in section 15 of Article II, "Private property shall not be *taken* or damaged, for public or private use, without just compensation." (Emphasis added.)

The federal constitutional requirement of just compensation for governmental takings is contained in the fifth amendment of the federal Constitution, and is applied against the states through the Due Process Clause of the fourteenth amendment. *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 481 n. 10, 107 S.Ct. 1232, 1240 n. 10, 94 L.Ed.2d 472 (1987); *see also Chicago, B. & Q. R. Co. v. City of Chicago*, 166 U.S. 226, 241, 17 S.Ct. 581, 586, 41 L.Ed. 979 (1897).

**2.** Consider, for example, the following hypothetical:

> If government, renovating a highway, encroaches on a foot or two of my frontage which I do not use or contemplate using, causing me negligible harm, it very likely will have to pay me something called the "fair market value" of the easement or fee which corresponds with its use; but if, renovating the same highway, it causes a change in the traffic flow which devalues my business site drastically, compensation may not be required.

Michelman, *Property, Utility, and Fairness: Comments on the Ethical Foundations of "Just Compensation" Law*, 80 Harv.L.Rev. 1165, 1170 (1967) (footnotes omitted).

lation goes "too far" that it is treated as a taking where compensation is compelled:

Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law. As long recognized some values are enjoyed under an implied limitation and must yield to the police power. But obviously the implied limitation must have its limits or the contract and due process clauses are gone. One fact for consideration in determining such limits is the extent of the diminution. When it reaches a certain magnitude, in most if not all cases there must be an exercise of eminent domain and compensation to sustain the act. So the question depends upon the particular facts.

*Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 413, 43 S.Ct. 158, 159, 67 L.Ed. 322 (1922). Thus "while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Id.* at 415, 43 S.Ct. at 160. *See also State Dep't of Highways v. Davis,* 626 P.2d at 644.

In *Davis* we recognized the abutting landowner's right to compensation for the limitation or loss of access if the limitation or loss substantially interfered with the landowner's means of ingress or egress to the property. 626 P.2d at 664. What the respondents urge us to do, and what the court of appeals did, is to adopt a per se rule that whenever a landowner's point of access to a particular street is completely taken there is substantial impairment of access and compensation is required. We

declined to fashion a per se rule in *Davis* and we decline the invitation to create one now.[3]

After citing a number of Colorado cases discussing an abutting landowner's right to compensation when access to the public street system was lost or limited by eminent domain proceedings, we stated:

The varying factual patterns and the technical legal distinctions encompassed in the cited cases foreclose us from making more than a statement of the general rules that govern the determination of whether an abutting landowner has suffered substantial loss or impairment of access which is compensable.

626 P.2d at 664. The respondents argue that a per se rule is appropriate here since land was physically taken by condemnation. However, we have held that whether or not property is actually taken is immaterial to the question of whether there has been a substantial limitation or loss of access which is compensable. *Id.* at 665. In analyzing the degree of limitation or loss of access

the trial judge must determine in the first instance whether a landowner's right of access has been subjected to unreasonable control or limitation. Whether there has been a compensable taking of access rights depends upon the nature and use of the property. A question of primary importance is whether the property is in fact a single economic unit or consists of separate economic units, each having particular access needs. Other factors to consider include

**3.** *See, e.g.,* 11 S. Flanagan, *McQuillan on Municipal Corporations* § 32:33, at 330–31 (3d ed. 1983):

An abutting owner has such an interest in the street as to entitle him to compensation under the constitution for a closing of the street or the impairment of its use as a means of access, and the test is whether he is left with reasonable access to his property. *Furthermore, the better rule, it has been said, is that one of two public streets may be closed without compensation to an abutting landowner if the remaining street furnishes suitable means of access.*

(Emphasis added; footnotes omitted.) *See also Palm Beach County v. Tessler,* 538 So.2d 846, 849 (Fla.1989) (fact that portion or even all of landowner's access to abutting road is destroyed does not constitute a taking unless, considered in the light of the remaining access, the landowner's right of access is substantially impaired); *Collins v. City of San Antonio,* 443 S.W.2d 563, 568 (Tex.Civ.App.—San Antonio 1969, writ ref'd n.r.e.) (one of two public streets on which landowner abuts may be closed without compensation if remaining street provides suitable means of access); *Archenhold Automobile Supply Co. v. City of Waco,* 396 S.W.2d 111, 114 (Tex.1965) (same); *Boese v. City of Salem,* 40 Or.App. 381, 383–84, 595 P.2d 822, 823 (1979) (closing of private driveway serving garages in rear of rental units by city not compensable because satisfactory access remained from another street).

the use of the property, the location of improvements thereon, its contiguity to the highway, the topography of the land, and all other pertinent characteristics of the property which may be relevant to its access needs.

*Shaklee v. Board of County Comm'rs*, 176 Colo. 559, 564, 491 P.2d 1366, 1368 (1971). We conclude that the trial court's finding that there was no substantial impairment of access is supported by the record and should be upheld. The relevant part of the trial court's findings of fact and conclusions of law is attached as Appendix A. The trial court considered relevant factors such as expected traffic flow, the use to which the property was to be put in the future, and the nature of the proposed access to Rooney Road.

The court of appeals erred in adopting a per se test of substantial impairment. In eliminating the respondents' proposed access to Rooney Road to construct C–470 the petitioner was exercising the legitimate police power of the state and no compensation was required.[4] Accordingly, the judgment of the court of appeals is reversed, and the case is remanded to the court of appeals with directions to reinstate the judgment of the trial court.

### APPENDIX A

The pertinent findings of the trial court are as follows:

This case presents two questions for resolution and the Court will address them separately. First, are Respondents entitled to compensation for damages to the remainder because of loss of access to Rooney Road? To succeed on this claim, the Respondents must show that this loss of access substantially interferes with their ingress and egress to the property. The evidence in this case

shows that the property in its before condition had only two means of access. Namely, West 4th Avenue at Rooney Road, hereinafter referred to as the Rooney Road entry, and West 4th Avenue as it entered the property from the east, hereinafter referred to as the 4th Avenue entry. The testimony of Ronald H[e]nsen [an expert for the respondents] was that 54% of the traffic to this property would be from the 4th Avenue entry and 46% from the Rooney Road entry. The Court questions this allocation of traffic flow because the 4th Avenue entry has much better proximity and convenience to the population that would be expected users of the property, and to major streets such as 6th Avenue, Interstate 70, and West Colfax Avenue. The Rooney Road entry, on the other hand, is in a totally undeveloped area and reachable only by a circuitous route from the population centers. The Court finds that a substantial majority of traffic would have entered from the 4th Avenue entry even in the before-condemnation condition. From the evidence it is clear that the Respondents anticipated that even in the before condition most users of their property would enter from the 4th Avenue entry. There is no showing that this entry cannot accommodate this traffic. The showing is only to the effect that it would be inconvenient. All traffic except very large trucks could use the 4th Avenue entry without difficulty, and large trucks could use it with difficulty only at one corner. *The loss of the Rooney Road entry and the inconvenience of the 4th Avenue entry does not constitute substantial impairment of access.* This is especially true in view of the fact the Respondents always assumed that

---

4. Our decisions in *Minnequa Lumber Co. v. City & County of Denver*, 67 Colo. 472, 186 P. 539 (1919), and *LaPlata Electric Association v. Cummins*, 728 P.2d 696 (Colo.1986), do not command a different result.

*Minnequa* was an inverse condemnation action brought by the lumber company to recover damages for depreciation in the value of its property due to the construction of the Larimer Street viaduct. Although the lumber company retained other points of access along other

streets, the construction of the viaduct materially interfered with the existing means of ingress and egress to the property. *Minnequa* would be inconsistent with the result in this case only if we were to hold, which we do not, that there is no substantial impairment as a matter of law whenever a landowner retains any point of access to his property.

In *LaPlata*, we distinguished *Davis*, and the present case is distinguishable from *LaPlata* on the same basis.

most users of the property would utilize the 4th Avenue entry. The Colorado Supreme Court in *Troiano v. Colorado Department of Highways*, 170 Colo. 484 [463 P.2d 448 (1969)] said, "Right of access is subject to reasonable control and limitation. So long as the landowner retains reasonable means of access to and from his property partial loss of access is not compensable." *Shaklee v. Board of County Commissioners*, 176 Colo. 559 [491 P.2d 1366 (1971)] and *State Department of Highways v. Davis*, 626 P.2d 661, (Colo.1981), also supports this position.

The Respondents have argued that as an abutting land owner on Rooney Road they are entitled to compensation for the loss of access as a matter of law. Justice Erickson settles this issue in *State Department of Highways v. Davis*, supra. He made it clear that abutment is not the controlling issue when he wrote at page 665:

> In our view, whether or not property is actually taken is immaterial to the issue of damages to the remainder of the property for loss or limitation of access. The same criteria must be used in both instances. Compensation is only required when the remainder is damaged by a substantial limitation or loss of access. (Citation omitted.) Any other result would create serious problems of fairness to landowners similarly situated.

Therefore, the controlling issue is damage to Respondents' right of access caused by the condemnation of land. The fact that Respondents' land abuts the roadway is only one factor for the Court to consider. *The Court concludes loss of the Rooney Road entry was not a compensable loss since the Respondents retained adequate access to the general street system from the 4th Avenue entry to their property.*

(Emphasis added.)