DEPARTMENT OF TRANSPORTATION,
STATE OF COLORADO, Petitioner–
Appellee,

v.

FIRST INTERSTATE COMMERCIAL
MORTGAGE COMPANY,
Respondent–Appellant.

No. 93CA1475.

Colorado Court of Appeals,
Div. IV.

Aug. 11, 1994.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Randall W. Sampson, Asst. Atty. Gen., Denver, for petitioner-appellee.

Duncan, Ostrander & Dingess, P.C., Donald M. Ostrander, Robert R. Duncan, Denver, for respondent-appellant.

Opinion by Judge DAVIDSON.

In this condemnation proceeding, respondent, First Interstate Commercial Mortgage Co. (First Interstate), appeals from the judgment of the trial court in favor of petitioner, Colorado Department of Transportation (the Department). We affirm.

At the time of the trial court proceedings, First Interstate owned a parcel of real property in Denver situated at the northeast corner of the intersection of Sheridan Boulevard and Hampden Avenue that was in use as a shopping center known as Bear Valley Mall.

Prior to the early 1960s, Hampden Avenue extended east as far as Sheridan Boulevard. In 1960, First Interstate's predecessors in interest settled a condemnation action between it and the Department in connection with the eastward development of Hampden Avenue as a freeway.

The Department wished to maintain limited freeway access. First Interstate's predecessors in interest wished to have direct access to the extended Hampden Avenue. Ultimately, First Interstate's predecessors in interest deeded to the Department all rights of access to Hampden Avenue with an exception for one 20–foot–wide opening. This deed of access rights was recorded.

This opening was then used as an access ramp from westbound Hampden Avenue into the parking area of Bear Valley Mall. Other access to Bear Valley Mall exists along the northern side of the property onto Dartmouth Avenue and along the western side of the property onto Sheridan Boulevard.

In June 1992, pursuant to a re-design of the Hampden Avenue/Sheridan Boulevard interchange, the Department filed a petition in condemnation to acquire a temporary easement for construction purposes over certain Bear Valley mall land and to eliminate the access point excepted from the access rights deeded to the Department in 1960.

Prior to trial on the merits, the Department filed a motion *in limine* to prevent First Interstate from presenting evidence as to any diminution in value of the Bear Valley Mall property resulting from the elimination of the access point. After argument by both parties, the trial court ruled that any contractual right to the access point contained in the settlement between the Department and First Interstate's predecessors in interest did not run with the land. Therefore, it concluded that, under current law, First Interstate was not entitled to be compensated for the elimination of that access because ingress and egress to the property was not substantially impaired. The trial court further found that, even if the right of access ran with the land, the Department had allowed access for a sufficient amount of time to have fully performed under the settlement agreement and could now eliminate the access.

Because both parties agreed that, if First Interstate could not present evidence as to damage to the value of the Bear Valley Mall property, no issues remained for resolution, the trial court entered a final judgment in favor of the Department.

I.

■ First Interstate argues that the trial court erred in determining that any contractual right to the access point did not create a property interest or covenant running with the land. We disagree.

■ First Interstate's predecessors in interest deeded their Hampden Avenue access rights to the Department but specifically excepted a right to one 20–foot access point. An exception totally excludes from the grant a specific portion of the estate or interest transferred and does not create a new, lesser than fee estate or interest. *Lincoln Savings & Loan Ass'n v. State*, 768 P.2d 733 (Colo. App.1988). Therefore, under the 1960 deed to the Department, an access point was excepted and retained by First Interstate's predecessors in interest.

Arguably, under the law as in effect at that time, First Interstate's predecessors in interest were entitled to compensation for the access rights they deeded to the Department as part of the settlement agreement. At the time of the 1960 deed, the law in Colorado was unclear as to whether a property owner who lost an access point to abutting streets or highways through condemnation could be

compensated if the loss of the access point did not substantially impair ingress and egress to the property. *See Boxberger v. State Highway Commission,* 126 Colo. 526, 533, 251 P.2d 920, 924 (1952) ("The [condemnation] statute provides for the purchase and condemnation of any right of access appertaining to any land abutting on a state highway or on a portion of a state highway where such right of access is disturbed or destroyed...."); *see also Minnequa Lumber Co. v. City & County of Denver,* 67 Colo. 472, 186 P. 539 (1919).

First Interstate concedes that the law concerning compensation for loss of access has since been clarified to require compensation for loss of access only if ingress and egress is substantially impaired. *See State Department of Highways v. Interstate–Denver West,* 791 P.2d 1119 (Colo.1990). First Interstate argues, however, that because the exception for the access point was bargained-for compensation under the settlement agreement, the right to have it remain open is a property right or covenant, running with the land, in the nature of an easement. In order to condemn the access point, it contends, the Department must compensate it for the disturbance and destruction of the access point as prescribed by *Boxberger v. State Highway Commission, supra,* the controlling authority at the time of the settlement. We do not agree.

■ "The general rule ... is that the right to compensation for the value of land taken is a personal right which belongs to the owner at the time of the taking." *Upper Eagle Valley Sanitation District v. Carnie,* 634 P.2d 1008, 1009 (Colo.App.1981); *see also Rogers v. Lower Clear Creek Ditch Co.,* 63 Colo. 216, 165 P. 248 (1917). Under the law of condemnation, then, payment for a compensable substantial loss of access is personal to the owner. *Majestic Heights Co. v. Board of County Commissioners,* 173 Colo. 178, 476 P.2d 745 (1970); *Gifford v. City of Colorado Springs,* 815 P.2d 1008 (Colo.App.1991).

Thus, even if we assume, arguendo, that First Interstate's predecessors in interest obtained a valid contractual right to have the access point remain open as part of their settlement agreement with the Department, that right was merely personal and did not transfer to First Interstate when it accepted a deed to the property in lieu of foreclosure. *See Rogers v. Lower Clear Creek Ditch Co., supra; Enke v. City of Greeley,* 31 Colo.App. 337, 504 P.2d 1112 (1972) (even if plaintiffs' predecessor in interest had a right to compensation for the property taken during his ownership, absent an assignment of that right, plaintiffs were limited to damages or taking occurring after they assumed possession and title).

First Interstate contends, however, that even if initially personal to the owner, because the exception for the access point was included in a recorded deed of access, the contractual right to have the access remain open was converted into a covenant running with the land by virtue of the recording. We disagree.

■ First Interstate has cited no authority to us to support that premise and our research has revealed none. Also, we note that the access deed here recorded does not contain any mention of a covenant requiring the Department to keep the access point open. Further, mere recording of an instrument is not dispositive as to whether a covenant therein will run with the land. *See Brown v. McDavid,* 676 P.2d 714 (Colo.App. 1983) (recorded covenant document which by its terms was to terminate in the year 2000 or by joint action of landowners did not create covenants running with the land and the restrictions therein were binding upon successive owners only until it was terminated).

First Interstate relies upon *Department of Public Works v. DiTomaso,* 248 Cal.App.2d 741, 57 Cal.Rptr. 293 (1967) for the proposition that the Department must honor the 1960 settlement agreement and compensate it for the loss of access. That case, however, is inapposite because there the property owners who sought to enforce the settlement of a prior condemnation action were themselves parties to the settlement agreement.

As the trial court found, the party who arguably agreed as a component of the settlement in 1960 to accept less compensation for the property condemned in exchange for

the access point is not the same party who came to court in 1992 seeking to enforce the terms of the settlement agreement. First Interstate does not assert that it had been assigned this contractual right, and therefore, the trial court was correct in concluding that any right to compensation for the elimination of the access point must be determined by the law in effect in 1992.

## II.

First Interstate does not dispute that the law of condemnation as in effect in 1992 requires compensation for loss of access only if ingress and egress to the property is substantially impaired. *See State Department of Highways v. Interstate–Denver West, supra; State Department of Highways v. Davis,* 626 P.2d 661 (Colo.1981). Thus, First Interstate's contentions notwithstanding, we conclude that the trial court correctly ruled on the issue of compensation without taking evidence as to the extent of the impairment of ingress and egress to the Bear Valley Mall property.

The question of whether ingress and egress is substantially impaired is a question of law. *State Department of Highways v. Davis, supra; Shaklee v. Board of County Commissioners,* 176 Colo. 559, 491 P.2d 1366 (1971) (the trial court must first determine if access has been subjected to unreasonable limitation).

The undisputed facts before the trial court indicated that the eliminated access point provided ingress only for westerly bound traffic from Hampden Avenue and that ingress and egress existed via Sheridan Boulevard at an intersection controlled by a traffic signal and at numerous locations along Dartmouth Avenue. From this the trial court concluded that access was not substantially impaired by its closure. We agree. *See State Department of Highways v. Davis, supra.*

That some travelers who would have otherwise used the Hampden Avenue access point would now have to exit Hampden Avenue at Sheridan and enter the property either by Sheridan or Dartmouth does not create a question of fact as to the extent of the impairment of access. Mere circuity of route and inconvenience do not constitute compensable damages for the elimination of an access point. *Majestic Heights Co. v. Board of County Commissioners, supra; see also Troiano v. Colorado Department of Highways,* 170 Colo. 484, 463 P.2d 448 (1969); *Radinsky v. City & County of Denver,* 159 Colo. 134, 410 P.2d 644 (1966).

Because of our resolution of these issues, we need not address First Interstate's other contentions.

The judgment is affirmed.

HUME and BRIGGS, JJ., concur.